IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

West Virginia Citizens Defense League, Inc., a
    West Virginia nonprofit corporation;
Keith T. Morgan;
Elizabeth L. Morgan;
Jereomy W. Schulz;
Benjamin L. Ellis; and
Masada Enterprises LLC, a West Virginia
    limited liability company,

          Plaintiffs,

            v.

City of Charleston, a West Virginia municipal
corporation; Danny Jones, personally and in
his official capacity as the Mayor of the City
of Charleston; Brent Webster, personally and
in his official capacity as the Chief of Police of
the City of Charleston; City of South
Charleston, a West Virginia municipal
corporation; Frank A. Mullens, Jr., personally
and in his official capacity as the Mayor of the
City of South Charleston; Brad L. Rinehart,
personally and in his official capacity as the
Chief of Police of the City of South
Charleston; City of Dunbar, a West Virginia
municipal corporation; Jack Yeager,
personally and in his official capacity as the
Mayor of the City of Dunbar; and Earl
Whittington, personally and in his official
capacity as the Chief of Police of the City of
Dunbar,

          Defendants

Civil No.: 2:11-cv-0048

COMPLAINT

Come now the Plaintiffs, West Virginia Citizens Defense League, Inc., Keith T. Morgan, Elizabeth L. Morgan, Jereomy W. Schulz, Benjamin L. Ellis, and Masada Enterprises, LLC, by and through their undersigned counsel, and complain of the Defendants as follows:

## PARTIES

1. Plaintiff West Virginia Citizens Defense League, Inc. (hereinafter "WVCDL"), is a West Virginia nonprofit corporation.

2. WVCDL is a nonpartisan, all-volunteer, grassroots organization of concerned West Virginians who support an individual's right to keep and bear arms for defense of self, family, home and state, and for lawful hunting and recreational use, as protected by the West Virginia Constitution and the Second Amendment of the United States Constitution.

3. WVCDL has members throughout the State of West Virginia, including many members who reside in or frequently visit the cities of Charleston, Dunbar, and South Charleston. Many WVCDL members have licenses to carry concealed handguns. Many WVCDL members regularly carry handguns for personal protection at all times and places they may lawfully do so; only when a federal, state, or local law or regulations whose enforcement has not been enjoined by a court of competent jurisdiction prohibits carrying a handgun at a particular time or place do some WVCDL members not carry a handgun on their persons. Many WVCDL members are active gun collectors who frequently buy handguns for their personal collections and occasionally sell handguns from their personal collections.

4. WVCDL brings this action on behalf of itself and its members.

5. Plaintiff Keith T. Morgan (hereinafter "Mr. Morgan") is a natural person who currently resides in, and at all times relevant in this case has resided in, an unincorporated area of

Kanawha County, West Virginia, at a location that is approximately one mile from the nearest point that is within the territorial limits of the City of Charleston. Mr. Morgan's home has a Charleston street address and a ZIP code that covers territory both within and without the territorial limits of the City of Charleston.  This address is printed on Mr. Morgan's driver's license, utility bills, and all other documentation which Mr. Morgan may use under applicable federal, state, and local laws, rules, and regulations to prove his place of residence when purchasing a firearm.

6. Mr. Morgan is a member of WVCDL and currently serves as WVCDL's President.

7. Plaintiff Elizabeth L. Morgan (hereinafter "Mrs. Morgan") is a natural person who currently resides in, and at all times relevant in this case has resided in, an unincorporated area of Kanawha County, West Virginia, at a location that is approximately one mile from the nearest point that is within the territorial limits of the City of Charleston. Mrs. Morgan's home has a Charleston street address and a ZIP code that covers territory both within and without the territorial limits of the City of Charleston.  This address is printed on Mrs. Morgan's driver's license, utility bills, and all other documentation which Mrs. Morgan may use under applicable federal, state, and local laws, rules, and regulations to prove her place of residence when purchasing a firearm.

8. Mrs. Morgan is a member of WVCDL.

9. Plaintiff Jeremy W. Schulz (hereinafter "Mr. Schulz") is a natural person who currently resides in, and at all times relevant in this case has resided in, the City of South Charleston.

10. Mr. Schulz is a member of WVCDL.

11. Plaintiff Benjamin L. Ellis (hereinafter "Mr. Ellis") is a natural person who currently resides in, and at all times relevant in this case has resided in, the City of Charleston, West Virginia.

12. Mr. Ellis is a member of WVCDL.

13. Plaintiff Masada Enterprises LLC (hereinafter "Masada") is a West Virginia limited liability company whose principal place of business is in Elkview, Kanawha County, West Virginia.

14. Mr. Ellis is the organizer and sole member of Masada.

15. Masada is a licensed dealer of firearms under 18 U.S.C. § 923 and is regularly engaged in the business of dealing firearms, including handguns, at its principal place of business.

16. Defendant City of Charleston is a municipal corporation organized under the constitution and laws of the State of West Virginia and a "person" within the meaning of 42 U.S.C. § 1983. The City of Charleston, through its police department, is responsible for executing and administering the laws, customs, practices, and policies at issue in this action. The City of Charleston is presently enforcing the challenged laws, customs and practices against Plaintiffs' interests.

17. Defendant Danny Jones (hereinafter "Mayor Jones") is the Mayor of the City of Charleston, and as such is responsible for executing and administering the City of Charleston's laws, customs, practices, and policies. In that capacity, Mayor Jones is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.

18. Defendant Brent Webster (hereinafter "Chief Webster") is the Chief of Police of the City of Charleston, and as such is responsible for executing and administering the City of

4

Charleston's laws, customs, practices, and policies. In that capacity, Chief Webster is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.

19. Defendant City of South Charleston is a municipal corporation organized under the constitution and laws of the State of West Virginia and a "person" within the meaning of 42 U.S.C. § 1983. The City of South Charleston, through its police department, is responsible for executing and administering the laws, customs, practices, and policies at issue in this action. The City of South Charleston is presently enforcing the challenged laws, customs and practices against Plaintiffs' interests.

20. Defendant Frank A. Mullens, Jr. (hereinafter "Mayor Mullens"), is the Mayor of the City of South Charleston, and as such is responsible for executing and administering the City of South Charleston's laws, customs, practices, and policies. In that capacity, Mayor Mullens is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.

21. Defendant Brad L. Rinehart (hereinafter "Chief Rinehart") is the Chief of Police of the City of South Charleston, and as such is responsible for executing and administering the City of South Charleston's laws, customs, practices, and policies. In that capacity, Chief Rinehart is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.

22. Defendant City of Dunbar is a municipal corporation organized under the constitution and laws of the State of West Virginia and a "person" within the meaning of 42 U.S.C. § 1983. The City of Dunbar, through its police department, is responsible for executing and administering the laws, customs, practices, and policies at issue in this action. The City of

Dunbar is presently enforcing the challenged laws, customs and practices against Plaintiffs' interests.

23. Defendant Jack Yeager (hereinafter "Mayor Yeager") is the Mayor of the City of Dunbar, and as such is responsible for executing and administering the City of Dunbar's laws, customs, practices, and policies. In that capacity, Mayor Yeager is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.

24. Defendant Earl Whittington (hereinafter "Chief Whittington") is the Chief of Police of the City of Dunbar, and as such is responsible for executing and administering the City of Dunbar's laws, customs, practices, and policies. In that capacity, Chief Whittington is presently enforcing the laws, customs, practices and policies complained of in this action, and is sued in both his individual and official capacities.

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 1983, 12132 and 12133. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal question claims that they form part of the same case or controversy under Article III of the United States Constitution.

26. Venue lies in this Court pursuant to 28 U.S.C. § 1391 because the Defendants are located in this District.

## STATEMENT OF FACTS

27. Charleston City Code § 18-421 provides, in pertinent part:

*Chief of police* means the chief of police of the city or his designated subordinate.

6

*Dealer* means any individual, corporation, partnership or venture which engages in any business, activity, trade or employment.

*Firearm* means any handgun, shotgun, rifle or any other object which expels a projectile by action of an explosion.

*Handgun* means any firearm which can be used and held with one hand.

*Purchaser* means any person who purchases or proposes to purchase a firearm from a dealer.

*Record* means any record of conviction for a felony involving violence or injury, the threat or the use of any firearm provided that there has been no pardon for the conviction, and provided further that the subject person has not had his civil rights restored, or any record of voluntary or involuntary confinement or treatment for mental health within three years prior to the registration form for a purchase of a handgun where the subject person has not been released from confinement or had treatment successfully terminated by the treating physician, or any criminal charge for which a warrant or indictment is currently pending.

*Sale, sell or purchase* means and includes a sale, lease, trade, rental, loan or any transfer, permanent or temporary, for valuable consideration.

28. Charleston City Code § 18-425 provides:

No person or dealer shall sell any handgun to any other person without first obtaining the following:

(1) A registration form which shall include the name and current residence address of the purchaser; the name and address of the seller shall be verified, signed and dated by the purchaser and time-stamped by the seller, and shall contain statements that the handgun is for the use of the purchaser and is not for resale within a 30-day period, and the purchaser has not purchased any other handgun within the 30-day period immediately prior to the date on the registration form.

(2) Satisfactory proof of identification, including one unexpired photo identification showing the name of the prospective purchaser issued by the state or any agency of the state, plus one other document not more than 90 days old, showing a name and address identical to that shown on the photo identification.

(3) A signed and dated acknowledgement of receipt of the handgun by the applicant, which acknowledgement shall be timestamped by the dealer.

A copy of the registration form shall be provided to the chief of police.

29. Charleston City Code § 18-426 provides:

> No sale may take place unless a period of at least 72 hours expires from the time the registration form is provided to the chief of police until the handgun is delivered to the purchaser. During the waiting period, the chief of police may conduct a search of available records to determine if the prospective purchaser has a record.

30. Charleston City Code § 18-424(c) provides:

> The provisions of section 18-426 relating to the waiting period shall not apply to transactions made at exhibitions or gun shows which are authorized by the chief of police; however, all other provisions of this article shall apply; and further, there shall be displayed at any such exhibition or show a warning that no person may purchase more than one handgun per 30 days.

31. Charleston City Code § 18-427 provides:

> Any person or dealer who sells any handgun shall, within 24 hours of delivery of the handgun, file with the chief of police a copy of the registration form required by this division, together with a notation stating the date and time the transaction was completed, the manufacturer, model and serial number of the handgun, and sworn verification that the identification required by this division was obtained. The dealer shall maintain a permanent record book which includes a copy of the registration form with the above notation. The permanent record book shall be open to inspection by any law enforcement officer during normal business hours.

32. Charleston City Code § 18-428 provides:

> No person or dealer shall knowingly sell any handgun to any other person who has acquired a handgun within the previous 30 days or who has a record, whether such record is made known by the chief of police or otherwise, or under any circumstances which would constitute a violation of any provision of this Code. No person shall purchase a handgun if such person has acquired a handgun within the previous 30 days or has a record, or under any circumstances which would constitute a violation of any provision of this Code.

33. Charleston City Code § 18-424(b) provides:

> The chief of police may authorize the purchase of three additional handguns in a 30-day period by written authorization, which authorization shall be appended to and made a permanent part of the registration form.

34. Charleston City Code § 18-422 provides:

> Any person, dealer or purchaser who shall violate any of the provisions of this article or who shall provide false or misleading information shall be deemed

guilty of a misdemeanor and upon conviction shall be punished by a fine not to exceed $1,000.00 or imprisonment for a term not to exceed 30 days, or both such fine and imprisonment in the discretion of the court. Each sale in violation of any provision of this article shall constitute a separate offense. Any dealer convicted under this section shall automatically lose his license to transact business in the city for a period of two years. Upon the expiration of the two-year period, the dealer may reapply for a handgun sales license under the same terms and conditions as any other prospective dealer.

35. Charleston City Code § 1-5 provides: "Except as otherwise provided by state law or city ordinance, the provisions of this Code apply both in the city and in the city's extraterritorial jurisdiction."

36. Upon information and belief, at all times relevant in this case, only two handgun dealers are and have been licensed by the City of Charleston and Chief Webster: Gander Mountain and Boggs Gun Shop.

37. Charleston City Code § 78-163 provides:

(a) It shall be unlawful for any person to carry on or about his person any revolver or pistol, dirk, bowie knife, slingshot, razor, billy, metallic or other false knuckles, or other dangerous or deadly weapon of like kind or character.

(b) This section shall not be construed so as to prohibit the carrying of any weapon pursuant to licenses or other authorization issued under the authority of W. Va. Code § 61-7-2, nor shall it be construed to prevent the carrying of any weapon by persons exempted under W. Va. Code §§ 61-7-3-61-7-6.

38. Charleston City Code § 78-164 provides:

(a) It shall be unlawful for any person to carry on or about his person in the following designated Sternwheel Regatta area: Kanawha Boulevard, East, from Capitol Street to Clendenin Street and from the north bank of the Kanawha River to the south sidewalk of Virginia Street, East, for ten days preceding Labor Day, and including Labor Day, any revolver or pistol, dirk, bowie knife, slingshot, razor, billy, metallic or other false knuckles, or other dangerous or deadly weapon of like kind or character.

(b) This section shall not be construed so as to prohibit the carrying of any weapon pursuant to licenses or other authorization issued under the authority of W. Va. Code § 61-7-2, nor shall it be construed to prevent the carrying of any weapon by persons exempted under W. Va. Code §§ 61-7-3-61-7-6.

39. Charleston City Code § 78-165 provides:

> It shall be unlawful for any person to carry on or about his person any revolver or pistol, dirk, bowie knife, slingshot, razor, billy, metallic or other false knuckles, or other dangerous or deadly weapon of like kind or character in or upon city hall, municipal auditorium, the civic center, and all parks and recreation buildings and facilities, including recreation centers, playgrounds, swimming pools, dressing areas, tennis courts, parks and recreation areas and all other buildings, structures, facilities, and grounds thereof, owned or occupied by the City of Charleston; however, the provisions of this section shall not apply to city, county, state and federal law enforcement officers and to exhibitors and performers at city-sanctioned events who obtain advance written authorization from the chief of police.

40. A violation of Charleston City Code §§ 78-163, 164, or 165 is punishable under the general penalty provisions of Charleston City Code § 1-8, which provides:

> (a)   In this section, "violation of this Code" means any of the following:
>
> (1)   Doing an act that is prohibited or made or declared unlawful, an offense, a violation or a misdemeanor by ordinance or by rule or regulation authorized by ordinance.
>
> (2)   Failure to perform an act that is required to be performed by ordinance or by rule or regulation authorized by ordinance.
>
> (3)   Failure to perform an act if the failure is prohibited or is made or declared unlawful, an offense, a violation or a misdemeanor by ordinance or by rule or regulation authorized by ordinance.
>
> (b)   In this section, "violation of this Code" does not include the failure of a city officer or city employee to perform an official duty unless it is specifically provided that the failure to perform the duty is to be punished as provided in this section.
>
> (c)   Except as otherwise provided by law or ordinance, a person convicted of a violation of this Code shall be punished by a fine of not less than $10.00 and not more than $500.00, imprisonment for a term not exceeding 30 days, or any combination. Except as otherwise provided by law or ordinance, with respect to violations of this Code that are continuous with respect to time, each day that the violation continues is a separate offense.
>
> (d)   The imposition of a penalty does not prevent suspension or revocation of a license, permit or franchise or other administrative sanctions.

(e)  Violations of this Code that are continuous with respect to time are a public nuisance and may be abated by injunctive or other equitable relief. The imposition of a penalty does not prevent injunctive relief.

41. South Charleston City Code § 545.15 provides:

No person other than an authorized law enforcement official shall bring into or have in his possession in any City-owned building, park or recreation area, any revolver, pistol, dirk, bowie knife, razor, gunshot, billy, metallic or other false knuckles, or any other dangerous or deadly weapon of like kind or character.

42. Any person who violates South Charleston City Code § 545.15 is subject to the general

penalty provisions of South Charleston City Code § 501.99(a), which provides:

Whoever violates any provision of this Part Five - General Offenses Code for which no other penalty is provided shall be fined not more than five hundred dollars ($500.00), or imprisoned not more than thirty days, or both.  Each day such violation continues shall constitute a separate offense.

43. Dunbar City Code § 545.13 provides:

(a) It shall be unlawful for any person armed with a firearm or other dangerous weapon, including those which have been licensed but excepting those lawfully issued to members of a Federal, State, County or Municipal Law Enforcement Department to carry, brandish, or holster such weapon at Dunbar City Hall.

(b) It shall be unlawful for any person armed with a firearm or other dangerous weapon including those which have been licensed but excepting those lawfully issued to members of a Federal, State, County or Municipal Law Enforcement Department to carry, brandish, holster or store such weapon at any City municipal building or any City owned park.

(c) A sign shall be posted at Dunbar City Hall and other municipal buildings and parks which shall read as follows:

Notice

All Persons Entering This Building Are Subject To Search:

Any And All Weapons Or Contraband Will Be Confiscated With The Potential Of Criminal Prosecution.

 - Weapons Subject To Confiscation –

Revolvers, Pistols, Rifles, Shotguns, Dirk, Blackjack, Knife (Except Those Knives Being Utilized As A Utensil At A Picnic Or Party, Or Those Knives Used As An Work Instrument By Employees Or Contractors), Sling Shot, Razor, Billy,

Metallic Or False Knuckles, Tear Gas, Or Other Deadly Weapon Of Like Character Or Any Facsimile Thereof That Is Intended Or Readily Adaptable For Use Which May Produce Death Or Serious Bodily Harm.

(d) Whoever violates this section shall, for a first offense, be guilty of a misdemeanor.

(e) If any portion of this section is found to be unconstitutional or unlawful for any reason those portions which are not deemed unconstitutional or unlawful shall be severed and shall retain their full force and meaning.

44. On or about January 23, 2011, Mr. Morgan went to the Gander Mountain store located in the City of Charleston and identified, selected, and attempted to purchase a Kel-Tec P3AT pistol.

45. On or about January 23, 2011, after Mr. Morgan went to the Gander Mountain store located in the City of Charleston and identified, selected, and attempted to purchase a Kel-Tec P3AT pistol, an employee of Gander Mountain informed Mr. Morgan that under Charleston City Code §§ 18-421 through 428, Mr. Morgan was subject to a 72-hour waiting period, could not purchase the handgun if he had purchased any other handgun within the preceding 30 days, and would be required to complete a handgun purchase registration form prescribed by the City of Charleston and Chief Webster.

46. Upon being informed of the requirements of Charleston City Code §§ 18-421 through 428, Mr. Morgan declined to proceed with his planned purchase.

47. But for the requirements of Charleston City Code §§ 18-421 through 428, Mr. Morgan would have completed his planned purchase.

48. On multiple occasions, Mr. Morgan has purchased a handgun from a licensed dealer within the City of Charleston. As part of each purchase, Mr. Morgan completed the handgun purchase registration form prescribed by the City of Charleston and Chief Webster in its entirety.

49. On multiple occasions, Mrs. Morgan has purchased a handgun from a licensed dealer within the City of Charleston.  As part of each purchase, Mrs. Morgan completed the handgun purchase registration form prescribed by the City of Charleston and Chief Webster in its entirety.

50. On or about January 23, 2011, Mr. Schulz went to the Gander Mountain store located in the City of Charleston and identified, selected, and attempted to purchase a Sig P220 pistol with night sights.

51. On or about January 23, 2011, after Mr. Schulz went to the Gander Mountain store located in the City of Charleston and identified, selected, and attempted to purchase a Sig P220 pistol with night sights, an employee of Gander Mountain informed Mr. Schulz that under Charleston City Code §§ 18-421 through 428, Mr. Morgan was subject to a 72-hour waiting period, could not purchase the handgun if he had purchased any other handgun within the preceding 30 days, and would be required to complete a handgun purchase registration form prescribed by the City of Charleston and Chief Webster.

52. Upon being informed of the requirements of Charleston City Code §§ 18-421 through 428, Mr. Schulz declined to proceed with his planned purchase.

53. But for the requirements of Charleston City Code §§ 18-421 through 428, Mr. Schulz would have completed his planned purchase.

## COUNT 1: CHARLESTON'S HANDGUN SALES ORDINANCES ARE UNCONSTITUTIONALLY VAGUE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

54. Paragraphs 1 through 53 are incorporated by reference.

55. The provisions of Charleston City Code §§ 18-421 through 428, referring to prohibiting various acts by any "person or dealer" or words to a similar effect, are not sufficiently explicit to inform a reasonable person who is subject to those provisions whether those provisions regulate the transfer of handguns not only by licensed dealers, but also by literally any other person, including any resident of the City of Charleston who may attempt to sell, loan, or rent a handgun from his or her personal collection, or any resident of the City of Charleston who may purchase or rent a handgun for any purpose within or without the territorial limits of the City of Charleston.

56. Mr. Ellis cannot reasonably determine whether Charleston City Code §§ 18-421 through 428, referring to prohibiting various acts by any "person or dealer" or words to a similar effect, serve to regulate the transfer of handguns not only by licensed dealers, but also by literally any other person, including any resident of the City of Charleston who may attempt to sell, loan, or rent a handgun from his or her personal collection, either within or without the territorial limits of the City of Charleston, or any resident of the City of Charleston who may purchase or rent a handgun for any purpose within or without the territorial limits of the City of Charleston.

57. People of reasonable intelligence must necessarily guess whether Charleston City Code §§ 18-421 through 428, referring to prohibiting various acts by any "person or dealer" or words to a similar effect, serve to regulate the transfer of handguns not only by licensed dealers, but also by literally any other person, including any resident of the City of Charleston who may attempt to sell, loan, or rent a handgun from his or her personal collection, either within or without the territorial limits of the City of Charleston, or any

resident of the City of Charleston who may purchase or rent a handgun for any purpose within or without the territorial limits of the City of Charleston.

58. Mr. Ellis, as a resident of the City of Charleston, reasonably fears arrest, prosecution, fine, and incarceration if he, within or without the territorial limits of the City of Charleston, purchases, rents, or attempts to purchase or rent, more than one handgun in any 30-day period; "purchases" any handgun without completing the City of Charleston handgun registration form; "purchases" any handgun without waiting 72 hours after completing the City of Charleston handgun registration form; "purchases" any handgun, anywhere, from any seller who is not a licensed handgun dealer within the City of Charleston; or is involved in any transaction anywhere, either within or without the territorial limits of the City of Charleston, in which any person "purchases" a handgun from him.

59. Masada, as a licensed firearm dealer under 18 U.S.C. § 923, is subject to extensive regulation of its activities as a licensed firearm dealer under federal law and regulations.

60. 18 U.S.C. § 922(b)(2) provides, in pertinent part:

> It shall be unlawful for any . . . licensed dealer . . . to sell or deliver . . . any firearm to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance[.]

61. Under 18 U.S.C. § 924(a)(1), any person who willfully violates 18 U.S.C. § 922(b)(2) is subject to imprisonment for up to 5 years and/or a $250,000 fine.  Furthermore, any such conviction would result in the person becoming prohibited from possessing firearms. *See* 18 U.S.C. § 922(d)(1) and (g)(1); W.Va. Code § 61-7-7(a)(1).

62. Under 18 U.S.C. § 923(e) and (f), the Attorney General of the United States may revoke any federal firearms license "if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General[,]" regardless of whether the licensee has been convicted of any crime.

63. Mr. Ellis and Masada reasonable believe that, in addition to the penalties prescribed by Charleston City Code § 18-422, they could be subject to an extensive federal criminal investigation and potentially prosecuted, imprisoned, fined, and forever lose their respective rights to legally possess firearms or engage in the firearms business.  Mr. Ellis and Masada also reasonably believe that even if they were not ultimately criminally prosecuted, they would, if subject to a federal criminal investigation, likely incur significant legal fees in defending their legal interests that could devastate their personal and business finances.

64. WVCDL has individual members residing both within and without the City of Charleston.

65. WVCDL's members who reside within the City of Charleston are similarly-situated to Mr. Ellis and incorporate by reference all claims Mr. Ellis individually has made regarding the implications of Charleston City Code §§ 18-421 through 428 on their respective individual acquisitions or dispositions of handguns.

66. WVCDL's members who reside outside the City of Charleston who have federal firearms licenses are similarly-situated to Masada and incorporate by reference all claims Mr. Ellis and Masada have made regarding the implications of Charleston City Code §§ 18-421 through 428 on the activities of federal firearms licensees.

67. WVCDL's members who reside outside the City of Charleston who are not engaged in the firearms business and who do not have federal firearms licenses face significant legal uncertainty regarding whether Charleston City Code §§ 18-421 through 428 affects any sale, rental, or other "purchase" of a handgun by a resident of the City of Charleston, and whether they could face adverse legal actions resulting from any sale, rental or other transfer of a handgun to a resident of the City of Charleston.

68. The Supremacy Clause of Article VI of the United States Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges of every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

69. The provisions of Charleston City Code §§ 18-421 through 428, referring to prohibiting various acts by any "person or dealer" or words to a similar effect, are void for vagueness under the Due Process Clause of Fourteenth Amendment to the United States Constitution.

## COUNT 2: CHARLESTON'S HANDGUN SALES ORDINANCES ARE UNCONSTITUTIONALLY VAGUE IN VIOLATION OF THE DUE PROCESS CLAUSE OF ARTICLE III, § 10 OF THE WEST VIRGINIA CONSTITUTION

70. Paragraphs 1 through 69 are incorporated by reference.

71. The provisions of Charleston City Code §§ 18-421 through 428, referring to prohibiting various acts by any "person or dealer" or words to a similar effect, are void for vagueness under Article III, § 10 of the West Virginia Constitution.

## COUNT 3: CHARLESTON'S ONE HANDGUN PER MONTH PURCHASE LIMIT VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

72. Paragraphs 1 through 71 are incorporated by reference.

73. The Second Amendment to the United States Constitution provides: "[a] well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

74. The Fourteenth Amendment to the United States Constitution provides, in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws."

75. The Second Amendment to the United States Constitution is incorporated as against the States and their political subdivisions pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

76. Under the Second Amendment to the United States Constitution, as incorporated against the states and their political subdivisions by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, no government may impose any numerical limit on the number of firearms any person may possess or purchase at any time or otherwise ration the exercise of an individual's fundamental, constitutionally-protected right to keep and bear arms.

77. Although Charleston City Code § 18-424(b) authorizes the chief of police to authorize the purchase of up to 3 additional handguns in a 30-day period, Charleston City Code §§ 18-424(b) and 428 nevertheless operate to impose a numerical limit on the number of handguns that may be lawfully "purchased" (defined in Charleston City Code § 18-421 to include not only a purchase but also temporary rental, such as the rental of a handgun at a shooting range).

78. If this court holds that the provisions of Charleston City Code §§ 18-421 through 428, referring to prohibiting various acts by any "person or dealer" or words to a similar effect, are not void for vagueness under the Due Process Clause of Fourteenth Amendment to the United States Constitution or Article III, § 10 of the West Virginia Constitution, and that those provisions apply broadly and literally to all handgun "purchases," regardless of whether the "purchase" is a dealer transaction or a private sale, or conducted within or without the territorial limits of the City of Charleston, the unconstitutionality of Charleston City Code §§ 18-424(b) and 428 under the Second Amendment to the United States Constitution, as incorporated against the states and their political subdivisions by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, is compounded by the fact that such a construction of the challenged ordinances denies any resident of the City of Charleston lawful access to the vast majority of public and private channels of lawfully acquiring a handgun by limiting the lawful channels of handgun "purchases" to only two licensed dealers.  Furthermore, if this court adopts such an interpretation of the City of Charleston's handgun "purchase" ordinances, Mr. & Mrs. Morgan and other WVCDL members who live outside the territorial limits of the city of Charleston but have Charleston residence addresses and

ZIP codes will face substantial burdens to purchasing handguns due to their apparent residence within the City of Charleston notwithstanding the fact they reside in unincorporated areas of Kanawha County that have Charleston addresses.

79. Charleston City Code §§ 18-424(b) and 428 are unconstitutional on their face under the Second Amendment to the United States Constitution, as incorporated against the states and their political subdivisions by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT 4: CHARLESTON'S ONE HANDGUN PER MONTH PURCHASE LIMIT VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER ARTICLE III, §22 OF THE WEST VIRGINIA CONSTITUTION

80. Paragraphs 1 through 79 are incorporated by reference.

81. Article III, § 22 of the West Virginia Constitution provides: "A person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use."

82. Under Article III, § 22 of the West Virginia Constitution, neither the state nor any of its political subdivisions may impose any numerical limit on the number of firearms any person may possess or purchase at any time or otherwise ration the exercise of an individual's fundamental, constitutionally-protected right to keep and bear arms.

83. Charleston City Code §§ 18-424(b) and 428 are unconstitutional on their face as violative of Article III, § 22 of the West Virginia Constitution, which protects as the right of an individual "to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use."

**COUNT 5: CHARLESTON'S ONE HANDGUN PER MONTH PURCHASE LIMIT**

**IS UNAUTHORIZED BY STATE STATUTE AND**

**INVALID AS A MATTER OF STATE LAW**

84. Paragraphs 1 through 83 are incorporated by reference.

85. In the State of West Virginia, municipalities are governments of enumerated powers, and those powers are strictly construed against any purported use of municipal power.

86. "Municipalities are but political subdivisions of the state, created by the Legislature for purposes of governmental convenience, deriving not only some, but all, of their powers from the Legislature. They are mere creatures of the Legislature, exercising certain delegated governmental functions which the Legislature may revoke at will. In fact, public policy forbids the irrevocable dedication of governmental powers. The power to create implies the power to destroy." *Booten v. Pinson*, 77 W.Va. 412, ___, 89 S.E. 985, 989 (1915).

87. "A municipal corporation possesses no inherent police power. It has only such regulatory authority as has been expressly or impliedly delegated to it by the Legislature." Syllabus Point 1, *State ex rel. Kelley v. City of Grafton*, 87 W.Va. 191, 104 S.E. 487 (1920).

88. "A municipal corporation is a creature of the State, and can only perform such functions of government as may have been conferred by the Constitution, or delegated to it by the law-making authority of the State. It has no inherent powers, and only such implied powers as are necessary to carry into effect those expressly granted." Syllabus Point 1, *Brackman's Inc., v. City of Huntington*, 126 W.Va. 21, 27 S.E.2d 71 (1943).

89. "When a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force

and effect." Syllabus Point 1, *Vector Co. v. Board of Zoning Appeals of City of Martinsburg*, 155 W.Va. 362, 184 S.E.2d 301 (1971).

90. "A municipal corporation has only the powers granted to it by the legislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If ***any*** reasonable doubt exists as to whether a municipal corporation has a power, the power ***must*** be denied." Syllabus Point 2, *State ex rel. City of Charleston v. Hutchinson*, 154 W.Va. 585, 176 S.E.2d 691 (1970) (emphasis added).

91. "Municipalities are creatures of the State who draw their powers from the law which creates them; therefore, if a city charter provision conflicts with either our Constitution or our general laws, the provision, being the inferior law, must fail." *Marra v. Zink*, 163 W.Va. 400, 404, 256 S.E.2d 581, 584 (1979) (citation omitted) (*citing Vector Co. v. Board of Zoning Appeals of City of Martinsburg, supra*).

92. No law of the State of West Virginia authorizes any municipality to limit the number of handguns that any person or licensed dealer may purchase, rent, sell, or otherwise transfer, either in the aggregate or within any particular period of time.

93. The City of Charleston cannot show beyond a reasonable doubt that it is authorized by any law of the State of West Virginia to limit the number of handguns that any person or licensed dealer may purchase, rent, sell, or otherwise transfer, within any particular period of time.

94. Charleston City Code §§ 18-424(b) and 428 are void on their face as a matter of West Virginia state law due to a lack of appropriate statutory authorization.

## COUNT 6: CHARLESTON'S 72-HOUR HANDGUN PURCHASE WAITING PERIOD VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

95. Paragraphs 1 through 94 are incorporated by reference.

96. Under the Second Amendment to the United States Constitution, as incorporated against the states and their political subdivisions by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, no government may impose any mandatory waiting period for the purchase or other acquisition of any firearm.

97. Charleston City Code §§ 18-424(c) and 426 are unconstitutional on their face under the Second Amendment to the United States Constitution, as incorporated against the states and their political subdivisions by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT 7: CHARLESTON'S 72-HOUR HANDGUN PURCHASE WAITING PERIOD VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER ARTICLE III, §22 OF THE WEST VIRGINIA CONSTITUTION

98. Paragraphs 1 through 97 are incorporated by reference.

99. Under Article III, § 22 of the West Virginia Constitution, neither the state nor any of its political subdivisions may impose any mandatory waiting period for the purchase or other acquisition of any firearm.

100. Charleston City Code §§ 18-424(c) and 426 are unconstitutional on their face as violative of Article III, § 22 of the West Virginia constitution, which protects as the right of an

individual "to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use."

## COUNT 8: CHARLESTON'S 72-HOUR HANDGUN PURCHASE WAITING PERIOD IS UNAUTHORIZED BY STATE STATUTE AND INVALID AS A MATTER OF STATE LAW

101. Paragraphs 1 through 100 are incorporated by reference.

102. No law of the State of West Virginia authorizes any municipality to impose any waiting period on any purchaser of any firearm.

103. The City of Charleston cannot show beyond a reasonable doubt that it is authorized by any law of the State of West Virginia to impose any waiting period on the sale or other transfer of any handgun.

104. Charleston City Code §§ 18-424(c) and 426 are void on their face as a matter of West Virginia state law due to a lack of appropriate statutory authorization.

## COUNT 9: CHARLESTON'S HANDGUN REGISTRATION REQUIREMENT VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

105. Paragraphs 1 through 104 are incorporated by reference.

106. Upon information and belief, the City of Charleston and Chief Webster maintain a permanent registry or other permanent collection of handgun purchase registration forms transmitted to the office of the chief of police pursuant to Charleston City Code §§ 18-425 and 427.

107. Charleston City Code § 18-427 requires all handgun dealers licensed by the city of Charleston to maintain a permanent record of all handgun purchase registration forms tendered to that dealer and requires the dealer to provide the Charleston police department unrestricted access to those records upon demand during the dealer's normal business hours.

108. The Second Amendment to the United States Constitution prohibits any government from compelling the registration of constitutionally-protected arms, including handguns, and protects as part of an individual's fundamental right to keep and bear arms, the right to own, acquire, and dispose of constitutionally-protected arms, including handguns, in private without the knowledge of the government.

109. The provisions of Charleston City Code §§ 18-421 through 428 requiring an individual who "purchases" a handgun to register that handgun with the chief of police and the provisions of Charleston City Code §§ 18-425 and 427 requiring the maintenance of a permanent handgun registry, violate the Second Amendment of the United States Constitution, as incorporated against the states by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**COUNT 10: CHARLESTON'S HANDGUN REGISTRATION REQUIREMENT VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER ARTICLE III, §22 OF THE WEST VIRGINIA CONSTITUTION**

110. Paragraphs 1 through 109 are incorporated by reference.

111. Article III, § 22 of the West Virginia Constitution prohibits the state and any of its political subdivisions from compelling the registration of constitutionally-protected arms, including handguns, and protects as part of an individual's fundamental right to keep and

bear arms, the right to own, acquire, and dispose of constitutionally-protected arms, including handguns, in private without the knowledge of the state or any of its political subdivisions.

112. The provisions of Charleston City Code §§ 18-421 through 428 requiring an individual who "purchases" a handgun to register that handgun with the chief of police and the provisions of Charleston City Code §§ 18-425 and 427 requiring the maintenance of a permanent handgun registry, violate Article III, § 22 of the West Virginia Constitution.

## COUNT 11: CHARLESTON'S HANDGUN REGISTRATION REQUIREMENT

## IS UNAUTHORIZED BY STATE STATUTE AND

## INVALID AS A MATTER OF STATE LAW

113. Paragraphs 1 through 112 are incorporated by reference.

114. The provisions of Charleston City Code §§ 18-421 through 428 requiring an individual who "purchases" a handgun to register that handgun with the chief of police and the provisions of Charleston City Code §§ 18-425 and 427 requiring the maintenance of a permanent handgun registry, are not authorized by any law of the State of West Virginia, and are void on their face as a matter of state law.

## COUNT 12: CHARLESTON'S HANDGUN REGISTRATION FORM REQUIRES A HANDGUN PURCHASER TO DISCLOSE HIS OR HER SOCIAL SECURITY NUMBER IN VIOLATION OF SECTION 7 OF THE PRIVACY ACT OF 1974 AND 42 U.S.C. § 408

115. Paragraphs 1 through 114 are incorporated by reference.

116. Section 7(a) of the Privacy Act of 1974, Public Law 93-579, reprinted in 5 U.S.C. § 552a notes, provides:

(1) It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number.

(2) the provisions of paragraph (1) of this subsection shall not apply with respect to—

(A) any disclosure which is required by Federal statute, or

(B) the disclosure of a social security number to any Federal, State, or local agency maintaining a system of records in existence and operating before January 1, 1975, if such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual.

117. 42 U.S.C. § 408 ("Penalties") provides that "(a) In general Whoever - . . . (8) discloses, uses, or ***compels the disclosure of the social security number of any person in violation of the laws of the United States***; shall be guilty of a felony and upon conviction thereof shall be fined under title 18 or imprisoned for not more than five years, or both." 42 U.S.C. § 408(a)(8) (emphasis added).

118. The Federal Firearm Transaction Record (Form 4473) prescribed by the Attorney General of the United States pursuant to 18 U.S.C. § 923(g) requires a prospective purchaser or other transferee of a firearm from a licensed firearm dealer to complete prior to receiving a firearm from the dealer, solicits the purchaser or transferee to disclose his or her Social Security account number but expressly states that disclosure is voluntary.

119. At all times relevant in this case, the handgun purchase registration form prescribed by the City of Charleston and Chief Webster pursuant to Charleston City Code §§ 18-421 through 428 has solicited the purchaser to disclose his or her Social Security account number on the handgun purchase registration form.

120. Upon information or belief, at all times relevant in this case, a handgun purchaser who does not disclose his or her Social Security account number on the City of Charleston

handgun purchase registration form will be deemed to not have completed the registration form and may not proceed with a handgun purchase.

121. Charleston City Code §§ 18-421 through 428 were first enacted on July 9, 1993.

122. The City of Charleston did not prescribe a handgun purchase registration form or solicit a prospective purchaser's Social Security account number before July 9, 1993.

123. The City of Charleston did not maintain a system of records in existence or operating before January 1, 1975, which solicited the Social Security account number of any person in connection with the purchase or any other completed or attempted transfer of a handgun.

124. No federal statute requires or authorizes the City of Charleston to solicit the disclosure of the Social Security account number of any person who purchases or attempts to purchase a handgun for which completion of the handgun purchase registration form prescribed by the City of Charleston and Chief Webster is required pursuant to Charleston City Code §§ 18-421.

## COUNT 13: CHARLESTON'S HANDGUN REGISTRATION FORM FAILS TO INFORM A PROSPECTIVE HANDGUN PURCHASER WHO IS SOLICITED TO DISCLOSE HIS OR HER SOCIAL SECURITY ACCOUNT NUMBER, WHETHER THE DISCLOSURE OF HIS OR HER SOCIAL SECURITY NUMBER IS MANDATORY OR VOLUNTARY, IN VIOLATION OF SECTION 7 OF THE PRIVACY ACT OF 1974

125. Paragraphs 1 through 124 are incorporated by reference.

126. Section 7(b) of the Privacy Act of 1974, Public Law 93-579, reprinted in 5 U.S.C. § 552a notes, provides:

> Any Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it.

127. The Federal Firearm Transaction Record (Form 4473) prescribed by the Attorney General of the United States pursuant to 18 U.S.C. § 923(g) provides the following Privacy Act disclosure:

> Solicitation of this information is authorized under 18 U.S.C. § 923(g). Disclosure of the individual's Social Security number is voluntary. The number may be used to verify the buyer's identity.

128. The handgun purchase registration form prescribed by the City of Charleston and Chief Webster pursuant to Charleston City Code §§ 18-421 through 428 does not state—and at all times relevant in this case has not stated—whether disclosure of the purchaser's Social Security account number is required or optional, the legal authority for the solicitation of the purchaser's Social Security account number, or the purposes for which the purchaser's Social Security account number will be used.

## COUNT 14: CHARLESTON'S HANDGUN REGISTRATION FORM FAILS TO INFORM A PROSPECTIVE HANDGUN PURCHASER WHO IS SOLICITED TO DISCLOSE HIS OR HER SOCIAL SECURITY ACCOUNT NUMBER, BY WHAT STATUTORY OR OTHER AUTHORITY SUCH NUMBER IS SOLICITED, IN VIOLATION OF SECTION 7 OF THE PRIVACY ACT OF 1974

129. Paragraphs 1 through 128 are incorporated by reference.

130. The handgun purchase registration form prescribed by the City of Charleston and Chief Webster pursuant to Charleston City Code §§ 18-421 through 428 does not state—and at all times relevant in this case has not stated—the legal authority for the solicitation of the purchaser's Social Security account number.

**COUNT 15: CHARLESTON'S HANDGUN REGISTRATION FORM FAILS TO INFORM A PROSPECTIVE HANDGUN PURCHASER WHO IS SOLICITED TO DISCLOSE HIS OR HER SOCIAL SECURITY ACCOUNT NUMBER, WHAT USES WILL BE MADE OF THE PURCHASER'S SOCIAL SECURITY ACCOUNT NUMBER, IN VIOLATION OF SECTION 7 OF THE PRIVACY ACT OF 1974**

131. Paragraphs 1 through 130 are incorporated by reference.

132. The handgun purchase registration form prescribed by the City of Charleston and Chief Webster pursuant to Charleston City Code §§ 18-421 through 428 does not state—and at all times relevant in this case has not stated—the purposes for which the purchaser's Social Security account number will be used.

**COUNT 16: CHARLESTON'S PROHIBITION ON CARRYING A WEAPON WITHOUT A LICENSE VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

133. Paragraphs 1 through 132 are incorporated by reference.

134. Under Charleston City Code § 78-163, it is prima facie unlawful for any person to carry a dangerous or deadly weapon about his or her person, regardless of whether the weapon is being carried openly or concealed.

135. Under Charleston City Code § 78-163, the only means by which ordinary citizens may lawfully bear arms is by possessing a state license to carry the weapon.

136. Under W.Va. Code § 61-7-4, a person who desires to obtain a state license to carry concealed weapons (currently the only type of license issued within the State of West Virginia that falls within the "license exception" to Under Charleston City Code § 78-

30

163) must pay licensing fees totaling $90 for a 5-year license.  Only certain honorably-retired law-enforcement officers are exempt from paying these fees.

137. The exercise of a constitutionally-protected right may not be licensed or taxed.

138. Charleston City Code § 78-163 is unconstitutional under the Second Amendment to the United States Constitution, as incorporated against the states and their political subdivisions by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT 17: CHARLESTON'S PROHIBITION ON CARRYING A WEAPON WITHOUT A LICENSE VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER ARTICLE III, §22 OF THE WEST VIRGINIA CONSTITUTION

139. Paragraphs 1 through 138 are incorporated by reference.

140. Charleston City Code § 78-163 is identical to former W.Va. Code § 61-7-1 (1975), which the West Virginia Supreme Court of Appeals held unconstitutional as a violation of Article III, § 22 of the West Virginia Constitution in *State ex rel. City of Princeton v. Buckner*, 180 W.Va. 457, 377 S.E.2d 139 (1988).

141. Charleston City Code § 78-163 violates Article III, § 22 of the West Virginia Constitution.

## COUNT 18: CHARLESTON'S PROHIBITION ON CARRYING A WEAPON WITHOUT A LICENSE IN THE STERNWHEEL REGATTA AREA VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

142. Paragraphs 1 through 141 are incorporated by reference.

143. Under Charleston City Code § 78-164, it is prima facie unlawful for any person to carry a dangerous or deadly weapon about his or her person, regardless of whether the weapon is being carried openly or concealed, in the "designated Sternwheel Regatta area" on Labor Day and the 10 preceding days annually.

144. Under Charleston City Code § 78-164, the only means by which ordinary citizens may lawfully bear arms in the "designated Sternwheel Regatta area" on Labor Day and the 10 preceding days annually is by possessing a state license to carry the weapon.

145. Charleston City Code § 78-164 is unconstitutional under the Second Amendment to the United States Constitution, as incorporated against the states and their political subdivisions by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT 19: CHARLESTON'S PROHIBITION ON CARRYING A WEAPON WITHOUT A LICENSE IN THE STERNWHEEL REGATTA AREA VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER ARTICLE III, §22 OF THE WEST VIRGINIA CONSTITUTION

146. Paragraphs 1 through 145 are incorporated by reference.

147. Charleston City Code § 78-164 violates Article III, § 22 of the West Virginia Constitution.

## COUNT 20: CHARLESTON'S PROHIBITION ON CARRYING A WEAPON WITHOUT A LICENSE IN THE STERNWHEEL REGATTA AREA IS UNAUTHORIZED BY STATE STATUTE AND INVALID AS A MATTER OF STATE LAW

148. Paragraphs 1 through 147 are incorporated by reference.

149. Charleston City Code § 78-164 is unauthorized by state statute and is void on its face as a matter of state law.

**COUNT 21: CHARLESTON'S PROHIBITION ON THE PURCHASE OF A HANDGUN BY, OR THE SALE OF A HANDGUN TO, A PURCHASER WHO HAS RECEIVED VOLUNTARY MENTAL HEALTH TREATMENT VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

150. Paragraphs 1 through 149 are incorporated by reference.

151. Charleston City Code §§ 18-421 and 428 operate jointly to prohibit any person who has received voluntary mental health treatment within the past 3 years from purchasing a handgun and prohibit any other person from knowingly selling that person a handgun.

152. Charleston City Code §§ 18-421 and 428 cast a much wider net than 18 U.S.C. § 922(d)(4) and (g)(4) and W.Va. Code § 61-7-7(a)(4), which limit their respective prohibitions on the purchase, possession, transfer, and receipt of firearms to those individuals who have been adjudicated as a mental defective or involuntarily committed to a mental institution.

153. Pursuant to the rulemaking authority provided by 18 U.S.C. § 926, the Attorney General of the United States has prescribed a regulation, 27 C.F.R. § 478.11, defining "adjudicated as a mental defective" as:

> (a) A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease:
>
> (1) Is a danger to himself or to others; or
>
> (2) Lacks the mental capacity to contract or manage his own affairs.
>
> (b) The term shall include—

(1) A finding of insanity by a court in a criminal case; and

(2) Those persons found incompetent to stand trial or found not guilty by reason of lack of mental responsibility pursuant to articles 50a and 72b of the Uniform Code of Military Justice, 10 U.S.C. 850a, 876b.

154. Pursuant to the rulemaking authority provided by 18 U.S.C. § 926, the Attorney General of the United States has prescribed a regulation, 27 C.F.R. § 478.11, defining "committed to a mental institution" as:

A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.

155. In order for a person to be prohibited from possessing firearms under federal law by reason of having been adjudicated as a mental defective or involuntarily committed to a mental institution, a person must have undergone undergone an individualized assessment that shows the person suffers a profound mental illness or disability.

156. Charleston City Code §§ 18-421 and 428, on their face, prohibit the purchase of handguns by, and the sale of handguns to, individuals who suffer from mild mental illnesses for which the person remains in sufficient control of his or her faculties and behavior to acknowledge his or her condition and voluntarily seek treatment for it, and who do not constitute a present danger to themselves or others.

157. The provisions of Charleston City Code §§ 18-421 and 428, prohibiting the purchase of handguns by, and the sale of handguns to, any person who has received voluntary mental health treatment in the last 3 years, are unconstitutional under the Second Amendment to the United States Constitution, as incorporated against the states and their political

subdivisions by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT 22: CHARLESTON'S PROHIBITION ON THE PURCHASE OF A HANDGUN BY, OR THE SALE OF A HANDGUN TO, A PURCHASER WHO HAS RECEIVED VOLUNTARY MENTAL HEALTH TREATMENT VIOLATES THE RIGHT OF AN INDIVIDUAL TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

158. Paragraphs 1 through 157 are incorporated by reference.

159. Charleston City Code §§ 18-421 and 428 do not provide any legal remedy for a person who is prohibited by those section from purchasing a handgun due to having voluntarily received mental health treatment within the last 3 years, to petition for relief from the legal disability on purchasing a handgun.

160. The provisions of Charleston City Code §§ 18-421 and 428, prohibiting the purchase of handguns by, and the sale of handguns to, any person who has received voluntary mental health treatment in the last 3 years without any process for a person to petition for relief from the applicable legal disability, are unconstitutional under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT 23: CHARLESTON'S PROHIBITION ON THE PURCHASE OF A HANDGUN BY, OR THE SALE OF A HANDGUN TO, A PURCHASER WHO HAS RECEIVED VOLUNTARY MENTAL HEALTH TREATMENT VIOLATES TITLE II OF THE AMERICANS WITH DISABILITIES ACT AND THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION

161. Paragraphs 1 through 160 are incorporated by reference.

162. Title II of the Americans with Disabilities Act prohibits discrimination against disabled persons by public entities. 42 U.S.C. §§ 12101 *et seq.* It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. A "public entity" is defined as "any department, agency . . . or other instrumentality of a local government." 42 U.S.C. § 12131(1)(B). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modification to rules, policies, or practices meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by the public entity." 42 U.S.C. § 12111(8).

163. Under regulations promulgated by the Attorney General of the United States pursuant to 42 U.S.C. § 12134, a person may not meet the "essential eligibility requirements" of the Americans with disabilities Act "if that individual poses a direct threat to the health or safety of others." 28 C.F.R. pt. 35, app. A at 446 That definition further provides that:

> The determination that a person poses a direct threat to the health or safety of others may not be based on generalizations or stereotypes about the effects of a particular disability. It must be based on an individualized assessment, based on reasonable judgment that relies on current medical evidence or on the best available objective evidence, to determine: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk. . . . Such an inquiry is essential if the law is to achieve its goal of protecting disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear, while giving appropriate weight to legitimate concerns, such as the need to avoid exposing others to significant health and safety risks.

164. The provisions of Charleston City Code §§ 18-421 and 428, prohibiting the purchase of handguns by, and the sale of handguns to, any person who has received voluntary mental health treatment in the last 3 years without an prior, individualized determination that the

person poses a direct threat to the health or safety of others, violate Title II of the Americans with Disabilities Act and are thus unconstitutional under the Supremacy Clause of Article VI of the United States Constitution.

### COUNT 24: CHARLESTON'S PROHIBITION ON THE PURCHASE OF A HANDGUN BY, OR THE SALE OF A HANDGUN TO, A PURCHASER WHO HAS RECEIVED VOLUNTARY MENTAL HEALTH TREATMENT VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER ARTICLE III, §22 OF THE WEST VIRGINIA CONSTITUTION

165. Paragraphs 1 through 164 are incorporated by reference.

166. The provisions of Charleston City Code §§ 18-421 and 428, prohibiting the purchase of handguns by, and the sale of handguns to, any person who has received voluntary mental health treatment in the last 3 years, are unconstitutional under Article III, § 22 of the West Virginia Constitution.

### COUNT 25: CHARLESTON'S PROHIBITION ON THE PURCHASE OF A HANDGUN BY, OR THE SALE OF A HANDGUN TO, A PURCHASER WHO HAS RECEIVED VOLUNTARY MENTAL HEALTH TREATMENT VIOLATES THE RIGHT OF AN INDIVIDUAL TO DUE PROCESS OF LAW UNDER ARTICLE III, § 10 OF THE WEST VIRGINIA CONSTITUTION

167. Paragraphs 1 through 166 are incorporated by reference.

168. The provisions of Charleston City Code §§ 18-421 and 428, prohibiting the purchase of handguns by, and the sale of handguns to, any person who has received voluntary mental health treatment in the last 3 years without any process for a person to petition for relief

from the applicable legal disability, are unconstitutional under the Due Process Clause of

Article III, § 10 of the West Virginia Constitution.

## COUNT 26: CHARLESTON'S PROHIBITION ON THE PURCHASE OF A HANDGUN BY, OR THE SALE OF A HANDGUN TO, A PURCHASER WHO HAS RECEIVED VOLUNTARY MENTAL HEALTH TREATMENT IS UNAUTHORIZED BY STATE STATUTE AND INVALID AS A MATTER OF STATE LAW

169. Paragraphs 1 through 168 are incorporated by reference.

170. The provisions of Charleston City Code §§ 18-421 and 428, prohibiting the purchase of handguns by, and the sale of handguns to, any person who has received voluntary mental health treatment in the last 3 years, are not authorized under any applicable state statute and are void as a matter of state law.

## COUNT 27: CHARLESTON'S PROHIBITION ON THE PURCHASE OF A HANDGUN BY, OR THE SALE OF A HANDGUN TO, A PURCHASER WHO HAS ANY CRIMINAL CHARGES PENDING VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

171. Paragraphs 1 through 170 are incorporated by reference.

172. Charleston City Code §§ 18-421 and 428 operate jointly to prohibit any person who has "any criminal charge for which a warrant or indictment is currently pending" from purchasing a handgun and prohibit any other person from knowingly selling that person a handgun.

173. Charleston City Code §§ 18-421 and 428 cast a much wider net than 18 U.S.C. § 922(d)(2), (g)(2) and (n), which limit their respective prohibitions on the purchase,

possession, transfer, and receipt of firearms to those individuals who are fugitives from justice by reason of having fled from any state to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding, or who have been indicted for a crime punishable by imprisonment for a term exceeding one year.

174. Upon information and belief, the City of Charleston and Chief Webster enforce the provisions of Charleston City Code §§ 18-421 and 428 that prohibit any person who has "any criminal charge for which a warrant or indictment is currently pending" from purchasing a handgun, to collect unpaid parking and traffic tickets that are in no way connected to any legitimate governmental interest in regulating firearms to prevent crime.

175. The provisions of Charleston City Code §§ 18-421 and 428, prohibiting the purchase of handguns by, and the sale of handguns to, any person who has "any criminal charge for which a warrant or indictment is currently pending," are unconstitutional under the Second Amendment to the United States Constitution, as incorporated against the states and their political subdivisions by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**COUNT 28: CHARLESTON'S PROHIBITION ON THE PURCHASE OF A HANDGUN BY, OR THE SALE OF A HANDGUN TO, A PURCHASER WHO HAS ANY CRIMINAL CHARGES PENDING VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER ARTICLE III, §22 OF THE WEST VIRGINIA CONSTITUTION**

176. Paragraphs 1 through 175 are incorporated by reference.

177. The provisions of Charleston City Code §§ 18-421 and 428, prohibiting the purchase of handguns by, and the sale of handguns to, any person who has "any criminal charge for

which a warrant or indictment is currently pending," are unconstitutional under Article III, § 22 of the West Virginia Constitution.

## COUNT 29: CHARLESTON'S PROHIBITION ON THE PURCHASE OF A HANDGUN BY, OR THE SALE OF A HANDGUN TO, A PURCHASER WHO HAS ANY CRIMINAL CHARGES PENDING IS UNAUTHORIZED BY STATE STATUTE AND INVALID AS A MATTER OF STATE LAW

178. Paragraphs 1 through 176 are incorporated by reference.

179. The provisions of Charleston City Code §§ 18-421 and 428, prohibiting the purchase of handguns by, and the sale of handguns to, any person who has "any criminal charge for which a warrant or indictment is currently pending," are not authorized under any applicable state statute and are void as a matter of state law.

## COUNT 30: CHARLESTON'S REQUIREMENT THAT A PROSPECTIVE HANDGUN PURCHASER PRODUCE AND DISPLAY SECONDARY DOCUENTATION OF RSIDENCE ADDRESS WITHIN THE LAST 90 DAYS IS UNAUTHORIZED BY STATE STATUTE AND INVALID AS A MATTER OF STATE LAW

180. Paragraphs 1 through 179 are incorporated by reference.

181. The provision of Charleston City Code § 18-425(2) requiring a prospective purchaser of a handgun to provide secondary documentation of his or her current residence address, issued within the last 90 days, is not authorized under any applicable state statute and is void as a matter of state law.

## COUNT 31: CHARLESTON'S REGULATION OF CLASSES OF INDIVIDUALS LAWFULLY PERMITTED TO PURCHASE OR BE SOLD HANDGUNS IS UNAUTHORIZED BY STATE STATUTE AND INVALID AS A MATTER OF STATE LAW

182. Paragraphs 1 through 181 are incorporated by reference.

183. To the extent not otherwise identified above, the provisions of Charleston City Code §§ 18-421 and 428 regulating the classes of individuals who may lawfully purchase handguns or be sold handguns are not authorized under any applicable state statute and are void as a matter of state law.

## COUNT 32: CHARLESTON'S PROHIBITION ON CARRYING WEAPONS ON CITY-OWNED PROPERTY VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

184. Paragraphs 1 through 183 are incorporated by reference.

185. Charleston City Code § 78-165 constitutes a complete prohibition on the carrying of any deadly weapons, including "arms" protected under the Second Amendment to the United States Constitution, on any real property owned or leased by the City of Charleston.

186. Among the places where Charleston City Code § 78-165 prohibits a person from carrying a handgun or other constitutionally-protected "arms" for self-defense, are many public parking lots, parking garages, city parks, and numerous other non-sensitive locations.

187. Mr. Morgan is a frequent patron of the Quarrier Street parking garage owned by the City of Charleston, Magic Island, and the city levee. On a less frequent basis, Mr. Morgan is a regular visitor to the Charleston Civic Center and its parking garage. All of these places

are owned by the City of Charleston and subject to the provisions of Charleston City Code § 78-165, which impose an absolute prohibition on carrying a handgun on any property owned by the city of Charleston.  On every occasion that Mr. Morgan visits any of these locations, he is prohibited by Charleston City Code § 78-165 from carrying a handgun. Mr. Morgan further interprets Charleston City Code § 78-165 as prohibiting him from possessing or storing a handgun in his personal vehicle if it is parked on any real property owned or occupied by the City of Charleston, including many city-owned parking lots and parking garages.

188. Mr. Morgan, Mrs. Morgan, Mr. Schulz, Mr. Ellis, and many other WVCDL members reasonably fear arrest, prosecution, fine, and imprisonment if they set foot on any real property to which the City of Charleston holds the deed while exercising their constitutionally-protected right to keep and bear arms for personal protection.

189. But for the ongoing threatened enforcement of Charleston City Code § 78-165, Mr. Morgan, Mrs. Morgan, Mr. Schulz, Mr. Ellis, and many other WVCDL members would regularly carry handguns when they visit various locations described in Charleston City Code § 78-165. Mr. Morgan, Mrs. Morgan, Mr. Schulz, Mr. Ellis, and many other WVCDL members are suffering the ongoing legal injury of the deprivation of their constitutionally-protected right to keep and bear arms for personal protection if they choose to set foot on literally any real property to which the City of Charleston holds the deed.

190. Charleston City Code § 78-165 violates the Second Amendment to the United States Constitution, as incorporated against the states and their political subdivisions by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**COUNT 33: CHARLESTON'S PROHIBITION ON CARRYING WEAPONS ON CITY-OWNED PROPERTY VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER ARTICLE III, §22 OF THE WEST VIRGINIA CONSTITUTION**

191. Paragraphs 1 through 190 are incorporated by reference.

192. Charleston City Code § 78-165 violates Article III, § 22 of the West Virginia Constitution.

**COUNT 34: CHARLESTON'S PROHIBITION ON CARRYING WEAPONS ON CITY-OWNED PROPERTY IS UNAUTHORIZED BY STATE STATUTE AND INVALID AS A MATTER OF STATE LAW**

193. Paragraphs 1 through 191 are incorporated by reference.

194. Charleston City Code § 78-165 is unauthorized by state statute and is void on its face as a matter of state law.

**COUNT 35: SOUTH CHARLESTON'S PROHIBITION ON CARRYING WEAPONS ON CITY-OWNED PROPERTY VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

195. Paragraphs 1 through 194 are incorporated by reference.

196. Among the places where South Charleston City Code § 545.15 prohibits a person from carrying a handgun or other constitutionally-protected "arms" for self-defense, are city parks, recreation areas, and other non-sensitive locations.

197. Mr. Schulz is a resident of the City of South Charleston and is a frequent visitor to Joplin Park.

198. Under South Charleston City Code § 545.15, Mr. Schulz is prohibited from carrying a handgun each time he visits Joplin Park or any other public park, recreation area, or building owned by the City of South Charleston.

199. Mr. Morgan, Mrs. Morgan, Mr. Ellis and many other WVCDL members occasionally visit public parks, recreation areas, or buildings owned by the City of South Charleston.

200. Mr. Morgan, Mrs. Morgan, Mr. Schulz, Mr. Ellis, and many other WVCDL members reasonably fear arrest, prosecution, fine, and imprisonment if they set foot in any location described in South Charleston City Code § 545.15 while exercising their constitutionally-protected right to keep and bear arms for personal protection.

201. But for the ongoing threatened enforcement of South Charleston City Code § 545.15, Mr. Morgan, Mrs. Morgan, Mr. Schulz, Mr. Ellis, and many other WVCDL members would regularly carry handguns when they visit various locations described in South Charleston City Code § 545.15. Mr. Morgan, Mrs. Morgan, Mr. Schulz, Mr. Ellis, and many other WVCDL members are suffering the ongoing legal injury of the deprivation of their constitutionally-protected right to keep and bear arms for personal protection if they choose to set foot in any location described in South Charleston City Code § 545.15.

202. South Charleston City Code § 545.15 violates the Second Amendment to the United States Constitution, as incorporated against the states and their political subdivisions by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT 36: SOUTH CHARLESTON'S PROHIBITION ON CARRYING WEAPONS ON CITY-OWNED PROPERTY VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER ARTICLE III, §22 OF THE WEST VIRGINIA CONSTITUTION

203. Paragraphs 1 through 202 are incorporated by reference.

204. South Charleston City Code § 545.15 violates Article III, § 22 of the West Virginia Constitution.

## COUNT 37: SOUTH CHARLESTON'S PROHIBITION ON CARRYING WEAPONS ON CITY-OWNED PROPERTY IS UNAUTHORIZED BY STATE STATUTE AND INVALID AS A MATTER OF STATE LAW

205. Paragraphs 1 through 204 are incorporated by reference.

206. South Charleston City Code § 545.15 is unauthorized by state statute and is void on its face as a matter of state law.

## COUNT 38: DUNBAR'S PROHIBITION ON CARRYING WEAPONS ON CITY-OWNED PROPERTY VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER THE SECOND AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

207. Paragraphs 1 through 206 are incorporated by reference.

208. Among the places where Dunbar City Code § 545.13 prohibits a person from carrying a handgun or other constitutionally-protected "arms" for self-defense, are city parks and other non-sensitive locations.

209. WVCDL members occasionally visit city parks and city-owned buildings in the city of Dunbar.

210. Mr. Morgan, Mrs. Morgan, Mr. Schulz, Mr. Ellis, and many other WVCDL members reasonably fear arrest, prosecution, fine, and imprisonment if they set foot in any location described in Dunbar City Code § 545.13 while exercising their constitutionally-protected right to keep and bear arms for personal protection.

211. But for the ongoing threatened enforcement of Dunbar City Code § 545.13, many WVCDL members would regularly carry handguns when they visit various locations described in Dunbar City Code § 545.13. Mr. Morgan, Mrs. Morgan, Mr. Schulz, Mr. Ellis, and many other WVCDL members are suffering the ongoing legal injury of the deprivation of their constitutionally-protected right to keep and bear arms for personal protection if they choose to set foot in any location described in Dunbar City Code § 545.13.

212. Dunbar City Code § 545.13 violates the Second Amendment to the United States Constitution, as incorporated against the states and their political subdivisions by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**COUNT 39: DUNBAR'S PROHIBITION ON CARRYING WEAPONS ON CITY-OWNED PROPERTY VIOLATES THE RIGHT OF AN INDIVIDUAL TO KEEP AND BEAR ARMS UNDER ARTICLE III, §22 OF THE WEST VIRGINIA CONSTITUTION**

213. Paragraphs 1 through 212 are incorporated by reference.

214. Dunbar City Code § 545.13 violates Article III, § 22 of the West Virginia Constitution.

**COUNT 40: DUNBAR'S PROHIBITION ON CARRYING WEAPONS ON CITY-OWNED PROPERTY IS UNAUTHORIZED BY STATE STATUTE AND INVALID AS A MATTER OF STATE LAW**

215. Paragraphs 1 through 214 are incorporated by reference.

216. Dunbar City Code § 545.13 is unauthorized by state statute and is void on its face as a matter of state law.

## **PRAYER FOR RELIEF**

Plaintiffs request a trial by jury on all issues triable before a jury and that judgment be entered in their favor and against Defendants as follows:

1. An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing each of the laws, customs, practices, and policies challenged in this action;

2. Declaratory relief consistent with the injunction;

3. Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

4. Costs of suit; and

5. Any other further relief to which plaintiffs may be entitled as the Court deems just and appropriate.

Dated this 24th day of January, 2011,

/s/ James M. Mullins, Jr.
James M. Mullins, Jr.        (WV State Bar # 11129)
Attorney for Plaintiffs
The Law Offices of James M. Mullins, Jr., PLLC
101 North Kanawha Street, Suite 401
Beckley, WV 25801
Telephone: 304-929-3500
FAX: 304-929-3503
E-mail: jim@mullinslawoffices.com