IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WEST VIRGINIA CITIZENS DEFENSE
LEAGUE, INC., *et al.*

       Plaintiffs,

vs.

CITY OF CHARLESTON, *et al.*

       Defendants.

CIVIL ACTION NO. 2:11-cv-0048

(Copenhaver, J.)

## THE CHARLESTON DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

    Defendants City of Charleston, Danny Jones, personally and in his official capacity as the Mayor of the City of Charleston, and Brent Webster, personally and in his official capacity as the Chief of Police of the City of Charleston (together, "Charleston Defendants" or "Defendants"), by their attorneys, respectfully submit this memorandum of law in support of their Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**I.    INTRODUCTION**

    Plaintiffs are a group of citizens, a firearms dealer and a gun rights organization seeking to strike down several handgun ordinances in the cities of Charleston, South Charleston and Dunbar. They sued each of these cities, as well as each city's Mayor and Chief of Police. The West Virginia Citizens Defense League has also filed a separate lawsuit against the City of Martinsburg and its Mayor, City Manager and Chief of Police in the District Court for the Northern District of West Virginia, No. 3:11-cv-00005-JPB.

In their Counts against Charleston, Plaintiffs challenge Charleston's ordinances on a variety of grounds ranging from the United States and West Virginia Constitutions, the Privacy Act, the Americans with Disabilities Act, to an implausible argument that Charleston was not empowered to enact these ordinances. However, Plaintiffs fail to make *any* particularized allegations that the ordinances have injured them or infringed upon their right to keep and bear arms. There is simply no case or controversy before the Court, as nowhere in the 34 Counts they have pleaded against the Charleston Defendants do Plaintiffs allege facts sufficient to confer standing. This Court is consequently devoid of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Accordingly, and for the additional reasons that the challenged ordinances are constitutional, and many of Plaintiffs' claims are grounded in an unsupportable theory of municipal impuissance, the Complaint must be dismissed.

## II.   STATEMENT OF FACTS

### A.   Status of Weapons Control in the United States, West Virginia and Charleston

The majority of Plaintiffs' claims arise under the Second Amendment to the United States Constitution, incorporated against the states and their political subdivisions under the Fourteenth Amendment, and Article III, § 22 of the West Virginia Constitution. These provisions state as follows:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

> A person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use.

W. Va. Const. art. III, § 22.

This lawsuit is part of the flood of litigation stemming from the United States Supreme Court's decisions in *District of Columbia v. Heller,* 554 U.S. 570 (2008) and *McDonald v. Chicago,* 130 S.Ct. 3020 (2010). In *Heller,* the Court struck down Washington D.C.'s ban on handgun possession, holding for the first time that the Second Amendment guarantees an individual right of "law-abiding, responsible citizens" to possess a firearm in the home for self-defense. 554 U.S. at 635. The *Heller* Court did not recognize a right to carry firearms outside of the home, specifically approved of cases upholding bans on carrying concealed weapons, and cautioned that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626-27. The Court termed these examples "presumptively lawful" under the Second Amendment and stated that the list "does not purport to be exhaustive." *Id.* at n.26. Two years later, in *McDonald,* the Court held that the Second Amendment applies to state and local governments in addition to the federal government. 130 S.Ct. at 3050. The *McDonald* decision "repeat[ed]" the "assurances" it made in *Heller* regarding its limited effect on other gun laws, agreed that "state and local experimentation with reasonable firearms regulation will continue under the Second Amendment," and confirmed that despite the municipalities' "doomsday proclamations," the Court's holding "does not imperil every law regulating firearms." 130 S.Ct. at 3047 (internal citations omitted).

Just days before Defendants filed this Motion, a three judge panel of the Fourth Circuit interpreted *Heller* and *McDonald* as follows: "The upshot of these landmark decisions is that there now exists a clearly-defined fundamental right to possess firearms for self-defense within the home. *But a considerable degree of uncertainty remains as to the scope of that right beyond the home and the standards for determining whether and how the right can be burdened by*

3

*governmental regulation.*" *United States v. Masciandaro,* No. 09-4839, 2011 WL 1053618, at *9 (4th Cir. Mar. 24, 2011) (emphasis added). Judges Wilkinson and Duffy wrote separately to underscore the potential danger of expanding the right set forth in *Heller* to apply outside the home without express guidance from the Supreme Court:

> There simply is no need in this litigation to break ground that our superiors have not tread. To the degree that we push the right beyond what the Supreme Court in *Heller* declared to be its origin, we circumscribe the scope of popular governance, move the action into court, and encourage litigation in contexts we cannot foresee. This is serious business. We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights. It is not far-fetched to think the *Heller* Court wished to leave open the possibility that such a danger would rise exponentially as one moved the right from the home to the public square.
>
> If ever there was an occasion for restraint, this would seem to be it. There is much to be said for a course of simple caution.

2011 WL 1053618, at * 17.

West Virginia's regulation of dangerous weapons is codified in Chapter 61, Articles 7 and 7A of the State's Code, as well as West Virginia's constitutional provision, ratified November 4, 1986. In addition, in 1999 the State Legislature adopted W. Va. Code § 8-12-5a, which forbids municipalities from limiting the people's right to purchase, possess, transfer, own, carry, transport, sell or store handguns. Significantly for purposes of this case, that law exempted any municipal ordinance in place as of its effective date. W. Va. Code § 8-12-5a.

In 1993 – six years prior to the passage of West Virginia's limitation on municipalities' right to regulate handguns in their jurisdictions – Charleston's City Council passed the ordinances Plaintiffs challenge today, at Chapter 18, article XI and Chapter 78, article III of the City's Code of Ordinances. Ord. Nos. 4982, § 6.106.2 (July 9, 1993), 4941 (Apr. 19, 1993). Those sections set forth who may sell or purchase handguns, the requisites and restrictions on such sales, a 72 hour waiting period for handgun sales, a prohibition against carrying weapons upon municipal public

4

property, as well as registration and licensing requirements and procedures. Charleston City Code §§ 18-421 through 428; §§ 18-451 through 454; §§ 78-163, -165.

      B. <u>Plaintiffs' Challenges to the Charleston Ordinances</u>

On January 24, 2011, the West Virginia Citizens Defense League, Inc. ("WVCDL"), four private citizens, and Masada Enterprises LLC ("Masada"), filed this lawsuit against the cities of Charleston, South Charleston and Dunbar, as well as each city's Mayor and Chief of Police. Plaintiffs filed their First Amended Complaint on March 16, 2011.

In the First Amended Complaint ("Complaint"), WVCDL identifies itself as a "nonpartisan, all-volunteer, grassroots organization of concerned West Virginias who support an individual's right to keep and bear arms for defense of self, family, home and state, and for lawful hunting and recreational use, as protected by the West Virginia Constitution and the Second Amendment of the United States Constitution." 1st Am. Compl. at ¶ 2. The private citizens are Keith Morgan, WVCDL's President and a non-Charleston resident; Elizabeth Morgan, a non-Charleston resident; Jereomy Schulz, a non-Charleston resident; and Benjamin Ellis, a Charleston resident, the owner of Masada. *Id.* at ¶¶ 5-12. Masada is a licensed dealer of firearms with its principal place of business in Elkview, Kanawha County, West Virginia. *Id.* at ¶¶ 13, 15.

In their Complaint, Plaintiffs allege the following against the Charleston Defendants:

1) Charleston's handgun sales are unconstitutionally vague in violation of the United States and West Virginia Constitutions (Counts 1- 2);
2) Charleston's one handgun per month purchase limit violates the United States and West Virginia Constitutions, and Charleston is not empowered under West Virginia law to limit the number of handguns purchased or sold (Counts 3-5);
3) Charleston's 72-hour handgun purchase waiting period is similarly unconstitutional and unauthorized by West Virginia law (Counts 6-8);
4) Charleston's handgun registration requirement is unconstitutional and unauthorized by West Virginia law (Counts 9-11);

5) The alleged requirement that a person disclose his or her social security number on a Charleston handgun purchase registration form violates the Privacy Act of 1974 (Counts 12-15);

6) The prohibition on carrying a weapon without a license is unconstitutional under both the United States and West Virginia Constitutions (Counts 16-17);

7) Charleston's prohibition on carrying a weapon without a license in the Sternwheel Regatta Area is unconstitutional and unauthorized by West Virginia law (Counts 18-20);

8) Charleston's definition of who is prohibited from purchasing a handgun on the basis of mental health is unconstitutional and violates Title II of the Americans with Disabilities Act (Counts 21-26);

9) Charleston's prohibition of handgun sales to a purchaser with criminal charges pending is unconstitutional and unauthorized by state statute (Counts 27-29);

10) Charleston's requirement that a prospective handgun purchaser produce and display secondary documentation of residential address within the last 90 days is unauthorized by state statute (Count 30);

11) Charleston's regulation of classes of individuals lawfully permitted to purchase or be sold handguns is unauthorized by state statute (Count 31);

12) Charleston's prohibition of carrying weapons on city-owned property violates the United States and West Virginia Constitutions and is unauthorized by state law (Counts 32-34).[1]

In support of these claims, Plaintiffs allege that "[m]any WVCDL members regularly carry handguns for personal protection at all times and places they may lawfully do so," and only do not carry handguns when legally prohibited from doing so. 1st Am. Compl. at ¶ 3. Many WVCDL members are allegedly licensed to carry concealed handguns, and "[m]any WVCDL members are active gun collectors who frequently buy handguns for their personal collections and occasionally

---

[1] Counts 35 through 40 are pleaded against the cities of South Charleston and Dunbar and therefore do not warrant a response by the Charleston Defendants.

sell handguns from their personal collections." *Id.* Plaintiffs allege that Mr. Morgan attempted to purchase a pistol in Charleston and was informed of the 72-hour waiting period, the one-handgun-per-month limitation, and the handgun purchase registration form requirements of Charleston City Code §§ 18-425, 426 & 428. 1st Am. Compl. at ¶¶ 45-46. Upon learning of these requirements, Mr. Morgan declined to proceed with his planned purchase, which he alleges he would have completed in the absence of the requirements. *Id.* at ¶¶ 47-48. Plaintiffs allege similar facts as to Mr. Schulz's attempted purchase of a pistol. *Id.* at ¶¶ 51-54.

### III. ARGUMENT

#### A. Legal Standards

##### 1. Federal Rule of Civil Procedure 12(b)(1)

Defendants move to dismiss under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6). Rule 12(b)(1) provides for dismissal when a court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Whether a plaintiff has standing to sue is a threshold jurisdictional question. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101 (1997). Article III, Section 2 of the Constitution limits the jurisdiction of federal courts to actual cases and controversies. *Bishop v. Bartlett,* 575 F.3d 419, 423 (4th Cir. 2009); *Pitt County v. Hotels.com, L.P.,* 553 F.3d 308, 312 (4th Cir. 2008); *Mobil Oil Corp. v. Attorney Gen. of Va.*, 940 F.2d 73, 75 (4th Cir. 1991). To satisfy the case-or-controversy requirement on judicial authority, the party invoking federal court jurisdiction must show: (1) an injury in fact, that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) causation; and (3) redressability. *Bishop,* 575 F.3d at 423; *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 56-61 (1992). This inquiry is performed to "ensure that the parties have enough of a stake in the case to litigate the issues properly," for, "[w]ere it otherwise the case, legal questions presented to the a court would be discussed 'in the rarefied atmosphere of a debating society' rather than 'in a concrete factual

context conducive to a realistic appreciation of the consequences of judicial action.'" *Falwell v. City of Lynchburg,* 198 F.Supp. 2d 765, 772 (W.D. Va. 2002) (citing *Piney Run Preservation Assoc. v. County Comm'ners,* 268 F.3d 255 (4th Cir. 2001)).

The Fourth Circuit and Supreme Court have "made it abundantly clear that one challenging the validity of a criminal statute must show a threat of prosecution under the statute to present a case or controversy." *Doe v. Duling,* 782 F.2d 1202, 1205 (4th Cir. 1986) (citing, *inter alia, Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298-99 (1979); *Ellis v. Dyson,* 421 U.S. 426 (1975)). The threat of prosecution must be "credible and alive at each stage of the litigation." *Id.* at 1206 (citing *Babbitt,* 442 U.S. at 298; *Ellis,* 421 U.S. at 435.) A plaintiff must allege "more than the fact that state officials stand ready to perform their general duty to enforce laws." *Id.* (citing *Poe v. Ullman,* 367 U.S. 497, 501 (1961)). Rather the threat of prosecution must be "both real and immediate." *Id.* (citing *Golden v. Zwickler,* 394 U.S. 103, 109-110 (1969)).

An association such as WVCDL has standing to sue on behalf of its members when: (1) at least one of it members would have individual standing to sue in his or her own right, (2) the interests the organization seeks to protect are germane to its purpose, and (3) there is no need for the direct participation of individual members in the action. *See, e.g., Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.,* 326 F.3d 505, 517 (4th Cir. 2003) (citing *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977)); *Piney Run,* 268 F.3d at 263. As to the first requirement, it is well-settled that the law of organizational standing requires plaintiff organizations to make specific allegations that at least one identified member has suffered or would suffer harm. *Summers v. Earth Island Inst.,* 129 S.Ct. 1142, 1151-52 (2009).

The Fourth Circuit has dismissed cases on standing grounds when Second Amendment rights are implicated. *See Frank Krasner Enters. v. Montgomery County*, 401 F.3d 230 (4th Cir. 2005) (reversing district court and finding gun show promoter and gun show exhibitor did not

have standing to challenge statute denying public funding to venues that displayed and sold guns because causation and redressability elements not met). Moreover, gun rights cases are frequently dismissed at the pleading stage when plaintiffs fail to allege sufficient facts to confer standing. *See, e.g. Seegars v. Ashcroft*, 396 F.3d 1248, 1255-56 (D.C. Cir. 2005) (finding, pre-*Heller*, that plaintiffs did not have standing to challenge provisions of District of Columbia's criminal code barring them from registering and lawfully possessing pistols in the District, or maintaining firearms in their homes free of mandates that the guns be unloaded and disassembled or trigger-locked, because plaintiffs had not shown a threat of prosecution reaching the required level of imminence); *Navegar, Inc. V. United States,* 103 F.3d 994, 1001 (D.C. Cir. 1997) (no "genuine threat of enforcement" when statute did not identify particular products manufactured by appellants, and "nothing in these portions indicates any special priority placed upon preventing these parties from engaging in specified conduct"); *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 294 (6th Cir. 1997) (individual and association plaintiffs lacked standing to challenge law prohibiting the transfer or possession of semiautomatic assault weapons and large capacity ammunition feeding devices because threat of prosecution was "still abstract, hypothetical, and speculative" and accordingly insufficient to fulfill the standing requirement of Article III); *Mont. Shooting Sports Ass'n v. Holder*, CV-09-147-DWM-JCL, 2010 U.S. Dist. LEXIS 104301, at **36-45 (D. Mont. Aug. 31, 2010) (dismissing claims by individual plaintiff and organization when neither sufficiently alleged concrete, particularized, actual or imminent injuries stemming from threat of federal prosecution hypothetically posed by conflict between federal firearms laws and the Montana Firearms Freedom Act); *Kegler v. United States DOJ*, 436 F. Supp. 2d 1204, 1219-20 (D. Wyo. 2006) (plaintiff lacked standing to seek declaratory judgment of his right to purchase firearms under federal Gun Control Act following expungement of his domestic violence conviction, as he failed to allege a "'credible threat of prosecution' sufficient to establish an

Article III injury in fact under even the most generous approach to that inquiry in this circuit"); see also *Nat'l Rifle Ass'n v. City of Pittsburgh,* 999 A.2d 1256, 1260 (Pa. Commw. Ct. 2010) and *Nat'l Rifle Ass'n v. City of Philadelphia,* 977 A.2d 78, 81-82 (Pa. Commw. Ct. 2009) .Finally, the party invoking federal jurisdiction bears the burden of establishing the case-or-controversy standing requirement. *Bishop,* 575 F.3d at 424 (citing *FW/PBS, Inc. V. City of Dallas,* 493 U.S. 215, 231 (1990)). That party "must include the necessary factual allegations in the pleading, or else the case must be dismissed for lack of standing." *Id.* (citing *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)).

2. *Federal Rule of Civil Procedure 12(b)(6)*

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations in the complaint as true. *Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.*, 910 F.2d 139, 143 (4th Cir. 1990). The court need not accept legal conclusions. *Evans v. CDX Servs., LLC*, 528 F.Supp. 2d 599, 603 (S.D. W. Va. 2007) (citing *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994)).

B. Examined Individually, None of the Named Plaintiffs has Sufficiently Alleged Standing.

The Complaint is defective both viewed through the lens of any individual Plaintiff or when analyzed Count-by-Count. Before examining the absence of subject matter jurisdiction as to respective claims, it is worthwhile to isolate each Plaintiff's individual nexus – or rather, lack thereof – to this case. When reviewed separately, the weakness of each Plaintiff's contentions is particularly striking.

1. *Plaintiff Masada is Not a Charleston Business and Does Not Have Standing to Challenge Any of Charleston's Ordinances.*

The scant allegations regarding Plaintiff Masada Enterprises LLC are that: (1) it is a business located in Elkview, Kanawha County, West Virginia (Compl. at ¶ 13); (2) Mr. Ellis is its organizer and sole member (*id.* at ¶ 14); (3) it is a licensed dealer of firearms and regularly deals firearms at its principal place of business (*id.* at ¶ 15); (4) it is subject to federal regulations (*id.* at ¶ 60); and (5) it believes it could be subject to federal criminal investigation and sanctions (*id.* at ¶ 64).

As such, Masada acknowledges that it is not even located in Charleston, and fails to make any allegations regarding how Charleston's ordinances have injured it, or could injure it. The only nexus alleged between Masada and any law whatsoever pertains to federal regulations, which are not at issue here. By any reading of Masada's allegations, it has failed to plead any injury in fact, let alone one concrete and particularized, as well as actual or imminent. *Bishop,* 575 F.3d at 423; *Lujan,* 504 U.S. at 556-61. Accordingly, all of Masada's claims must be dismissed.

2. *No Other Plaintiff Alleges Injury with Sufficient Particularity.*

The allegations of each individual Plaintiff and of WVCDL similarly fail to plead any injury in fact, let alone one concrete and particularized, as well as actual or imminent, that could support standing. *Id.*

Keith Morgan is not a resident of Charleston. 1st Am. Compl. at ¶ 5. He has purchased handguns from dealers within City limits on "multiple occasions," presumably by completing the paperwork without any apparent problem. *Id.* at ¶ 49. He chose not to do so on one specific occasion, ostensibly in order to attack the Ordinances in this lawsuit. *See id.* at ¶¶ 45-48.

Elizabeth Morgan is also not a resident of Charleston. *Id.* at ¶ 7. She has made no specific accusations of harm whatsoever. In fact, her sole "allegation" is that she has bought handguns in Charleston on "multiple occasions" after she completed the handgun purchase registration form in its entirety. *Id.* at ¶ 50.

11

<u>Jereomy Schulz</u> is another Charleston non-resident. *Id.* at ¶ 9. Like Mr. Morgan, he alleges that he chose not to purchase a handgun in Charleston on one particular occasion, upon being informed of the requirements for doing so. *Id.* at ¶¶ 51-54.

<u>Benjamin Ellis</u> is the only individual Plaintiff who actually lives in Charleston. *Id.* at ¶ 11. As the "organizer and sole member of Masada," Mr. Ellis sells guns from Masada's location outside the City limits. *Id.* at ¶¶ 13-15.

<u>WVCDL</u> allegedly has members throughout West Virginia. *Id.* at ¶ 3. Plaintiffs contend that WVCDL has members who regularly carry guns for personal protection at all times as well as members who are active gun collectors, but they do not allege that any individual member of the organization has suffered any actual injury stemming from the challenged Ordinances. *See id.* at ¶¶ 3-4. Other than the named Plaintiffs, no members of WVCDL are specifically identified. As WVCDL's standing necessarily hinges on the standing of any member, *Am. Canoe Ass'n,* 326 F.3d at 517, these allegations are insufficient to adequately allege a case or controversy. *See Summers*, 129 S.Ct. at 1152 ("[T]he Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm").

    C. <u>When Reviewed Claim-by-Claim, Plaintiffs Do Not Have Standing to Challenge Charleston's Handgun Ordinances.</u>

Plaintiffs' claims can be categorized into three groups: (1) allegations against Charleston's handgun registration procedures; (2) allegations against Charleston's carrying prohibitions; and (3) allegations against Charleston's prohibitions against sales to persons voluntarily seeking mental health treatment or who have criminal charges pending.[2] For all the reasons set forth below, Plaintiffs do not have standing to bring this suit against any of these laws.

---

[2] The Complaint also contains allegations of vagueness against all of the Ordinances (Counts 1 and 2), and a single claim (Count 31) alleging that Charleston's regulation of classes of individuals lawfully permitted to purchase or be

*1. No Plaintiff has Alleged Injury Resulting from Charleston's Handgun Registration Procedures.*

In Counts 3 through 11, Plaintiffs challenge Charleston's one handgun per month purchase limit, its 72 hour waiting period to purchase handguns, and the handgun registration requirement. Charleston City Code §§ 18-425, -426, -428. Plaintiffs challenge particular details of the registration form in Counts 12 through 15, regarding the form's request for the applicant's social security number, and in Count 30, regarding the requirement set forth in Charleston City Code § 18-425 that a prospective handgun purchaser provide secondary documentation of his or her current residential address.

Plaintiffs have not alleged any injury stemming from any of these ordinances or procedures. In fact, the plain language of Plaintiffs' Complaint belies their contention that they have been harmed or even affected, as they specifically claim that many WVCDL members "regularly carry handguns for personal protection at all times," "frequently buy handguns for their personal protection," as well as "occasionally sell handguns from their personal collections." 1st Am. Compl. at ¶ 3. Moreover, two of the individual Plaintiffs, Mr. and Mrs. Morgan, specifically allege that they have purchased handguns from licensed dealers in Charleston "on multiple occasions." *Id.* at ¶¶ 49, 50. Thus, according to the Complaint, Plaintiffs are able to exercise their rights to keep and bear arms despite the challenged Ordinances.

In an apparent attempt to show injury, Mr. Morgan and Mr. Schulz both allege that they have visited the Gander Mountain store located in the City of Charleston, where they were informed of the one handgun per month limit, waiting period and purchase registration form. *Id.* at ¶¶ 46, 52. Both gentlemen further allege that they declined to proceed with their planned purchases, and that "but for" the requirements of §§ 18-421 through 428, they would have

---

sold handguns is unauthorized by state law. These claims necessarily hinge on Plaintiffs' standing to bring any claims, and fail for all the reasons set forth with respect to individual claims, *infra.*

13

completed their purchases. *Id.* at ¶¶ 47-48, 53-54. These narratives do not raise any inference of injuries suffered; there is no allegation or suggestion that, had the Plaintiffs filled out the forms, they would not have been permitted to purchase the handguns. Rather, they each left the store without making any true attempt to purchase the handguns. Each chose to rely upon his own particularized interpretation of the possible outcome involved in completing the required forms in deciding to forego his transaction. Also, under the ordinance the Chief of Police may authorize the purchase of multiple handguns, yet Plaintiffs do not allege that authorization was sought, much less denied. Further, there is no express allegation in the Amended Complaint that *any* Plaintiff has been subject to a waiting period, or has attempted to purchase more than one handgun in a month. Most fundamentally, there is no allegation that any Plaintiff has been denied his or her right to keep and bear arms. On the contrary, the Plaintiffs allege that they do exercise those rights.

As no Plaintiff has pled injury, there is no case or controversy before the Court with respect to Charleston's registration procedures. These claims must therefore be dismissed. *Bishop,* 575 F.3d at 423.

> 2. *Plaintiffs have not alleged a credible threat of prosecution with respect to their claims against Charleston's licensing requirement or prohibitions against carrying on public property or in the Sternwheel Regatta area.*

In Counts 16 and 17, Plaintiffs challenge Charleston's prohibition against carrying a weapon without a license, Charleston City Code § 78-163. Similarly, in Counts 18 through 20, Plaintiffs challenge Charleston's prohibition against carrying a weapon without a license in the Sternwheel Regatta area for ten days preceding Labor Day, Charleston City Code § 78-164. Finally, in Counts 32 through 34, Plaintiffs contend that Charleston's prohibition against carrying weapons on City-owned property, Charleston City Code § 78-165, is unconstitutional and unauthorized by state statute.

14

The Complaint is devoid of any allegation that any one of the individual Plaintiffs or any member of WVCDL has been arrested, prosecuted, fined, imprisoned, or otherwise sanctioned for violation of any of Charleston's carrying ordinances. Nor do Plaintiffs allege any credible, "real and immediate" threat of such repercussions. *See Duling,* 782 F.2d at 1205.[3] In the absence of such allegations, these claims lack standing and must be dismissed.

The Sixth Circuit's decision in *NRA v. Magaw* is squarely on point. There, the court found that individual and association plaintiffs lacked standing to challenge a law prohibiting the transfer or possession of semiautomatic assault weapons and large capacity ammunition feeding devices, reasoning as follows:

> The individual plaintiffs aver that they "desire" and "wish" to engage in certain possibly prohibited activities, but are "restrained" and "inhibited" from doing so. They allege that they "are unable and unwilling, in light of the serious penalties threatened for violation of the statute, to obtain and possess the firearms and large capacity ammunition feeding devices prohibited by the statute." Although the standing requirement of an injury-in-fact is fairly lenient and may include a wide variety of economic, aesthetic, environmental, and other harms, the individual plaintiffs herein allege merely that they would like to engage in conduct, which might be prohibited by the statute, without indicating how they are currently harmed by the prohibitions other than their fear of prosecution. *Plaintiffs' assertions that they "wish" or "intend" to engage in proscribed conduct is not sufficient to establish an injury-in-fact under Article III. The mere possibility of criminal sanctions applying does not in and of itself create a case or controversy.* The individual plaintiffs have failed to show the high degree of immediacy necessary for standing when fear of prosecution is the only harm alleged.

132 F.3d 272, 293 (6th Cir. 1997) (emphasis added) (citations and quotations omitted). That court dismissed the claims for lack of standing even though plaintiffs there had telephoned authorities, posed a hypothetical question, and received an answer that the subject activity could subject them to federal prosecution. *Id.* at 293. Even in those circumstances, which allege a threat with more

---

[3] In their First Amended Complaint, Plaintiffs have added new allegations regarding the Charleston Defendants' supposed failure to protect the citizens of Charleston on public property, and Plaintiffs' policy arguments supporting a right to carry weapons on public property. These averments do nothing to support Plaintiffs' standing to bring these claims.

credibility than that at issue here, the court found the threat of prosecution to be "abstract, hypothetical, and speculative." *Id.* at 293-94; *see also Duling,* 782 F.2d at 1205; *Seegars,* 396 F.3d at 1255-56; *Mont. Shooting Sports Ass'n,* 2010 U.S. Dist. LEXIS 104301 at \*\*36-45; *Kegler,* 436 F.Supp. 2d at 1219-20.

Dismissal of these claims is also warranted under Fourth Circuit precedent on federal court review of state criminal statutes. As the court explained in *Duling,* federal courts are "principally deciders of disputes, not oracular authorities." 782 F.2d at 1205. "The case or controversy requirement maintains proper separation of powers between courts and legislatures, provides courts with arguments sharpened by the adversarial process, and narrows the scope of judicial scrutiny to specific facts. Where state criminal statutes are challenged, the requirement protects federalism by *allowing the states to control the application of their own criminal laws.*" *Id.* (emphasis added). Where, as here, no prosecution or credible threat of prosecution is before the Court, no case or controversy exists and this Court cannot pass judgment on the adequacy of Charleston's laws.

### 3. No Plaintiff has Alleged Injury Resulting from Charleston's Definition of "Record".

In addition to their failure to plead injury resulting from Charleston's handgun registration procedures generally, Plaintiffs have not alleged that they have suffered or will suffer injury from either (a) Charleston's prohibition on the purchase of a handgun by a purchaser who has received voluntary mental health treatment, Charleston City Code §§ 18-421 and 18-428, or (b) Charleston's prohibition on the purchase of a handgun by a purchaser who has any criminal charge for which a warrant or indictment is pending, Charleston City Code §§ 18-421 and 18-428.

Section 18-428 prohibits sales of handguns to any person who has a "record". In Section 18-421, the Code defines "record" to include, *inter alia,* "any record of voluntary or involuntary

16

confinement or treatment for mental health within three years prior to the registration form for a purchase of a handgun where the subject person has not been released from confinement or had treatment successfully terminated by the treating physician," or "any criminal charge for which a warrant or indictment is currently pending."[4]

In Counts 21 through 26, Plaintiffs challenge the "voluntary" mental health "treatment" portion of the Code's "mental health" definition. Plaintiffs contend that the provision, on its face, prohibits the purchase of handguns by individuals who suffer from mild mental illnesses but do not constitute a present danger to themselves or others. 1st Am. Compl. at ¶ 157. According to Plaintiffs, the restriction violates the United States Constitution, the Americans with Disabilities Act, and the West Virginia Constitution, and is further unauthorized by state statute. *Id*. at ¶¶ 151-171. In Counts 27 through 29, Plaintiffs challenge the inclusion of pending criminal charges in the definition of "record" as also violating the United States and West Virginia Constitutions, and as unauthorized by state statute. *Id*. at ¶¶ 172-180.

The Court need not reach the merits of Plaintiffs' claims, as Plaintiffs fail to allege a single fact regarding any injury they have suffered or will suffer as a result of the challenged ordinances. Indeed, the Complaint is wholly devoid of any allegation that any individual Plaintiff, or any member of WVCDL, either (a) suffers from a mental illness for which he or she is seeking voluntary mental health treatment, or (b) has criminal charges for which a warrant or indictment is currently pending. The Complaint is further devoid of any allegation that any such person intends to purchase a firearm in Charleston.

As such, Plaintiffs have made no showing of a concrete, particularized, actual injury in fact stemming from the City's prohibition of firearm purchases by persons voluntarily seeking mental

---

[4] Section 18-421 further defines "record" to include "any record of conviction for a felony involving violence or injury, the threat or the use of any firearm provided that there has been no pardon for the conviction, and provided further that the subject person has not had his civil rights restored."

health treatment, or persons with criminal charges pending. Because there is no case or controversy before the Court, Article III, Section 2 compels dismissal of these claims. *Summers*, 129 S.Ct. at 1148; *Lujan*, 504 U.S. at 578.

### C. Charleston was Authorized to Adopt the Challenged Legislation.

In addition to their constitutional arguments, Plaintiffs challenge many of Charleston's ordinances on the purported grounds that a municipality only has the powers granted to it by legislature, and that no West Virginia law "authorizes" any municipality to impose the challenged restrictions. *See* 1st Am. Compl. at ¶¶ 88-95. In support of this theory, Plaintiffs cite West Virginia authority for the proposition that a municipality only has the regulatory authority delegated to it by the State. *Id.* at ¶¶ 88-89 (citing *State ex rel. Kelley v. City of Grafton,* 104 S.E. 487 (W. Va. 1920); *Brackman's Inc. v. City of Huntington*, 27 S.E.2d 71 (W. Va. 1943)). Plaintiffs further note that a municipal ordinance which is "inconsistent or in conflict with" a state statute cannot be enforced. 1st Am. Compl. at ¶ 90 (citing *Vector Co. v. Bd. of Zoning Appeals,* 184 S.E.2d 301 (W. Va. 1971)).

The West Virginia Supreme Court has explained that the statutory phrase, "inconsistent or in conflict with" means that "a charter or ordinance provision is repugnant to the Constitution of this State or to general law because such provision (i) permits or authorizes that which the Constitution or general law forbids or prohibits, or (ii) forbids or prohibits that which the Constitution or general law permits or authorizes." *Am. Tower Corp. v. Common Council,* 557 S.E.2d 752, 756 (W. Va. 2001). Plaintiffs' argument here fails because Charleston handgun ordinances neither permit activity that West Virginia law forbids, nor do they forbid activity West Virginia law authorizes.

Compelling evidence for the *lack* of conflict lies in the language of W. Va. Code § 8-12-5a, passed in 1999 by the West Virginia legislature to forbid a municipality from limiting the

18

rights of persons to purchase, possess, transfer, own, carry, transport, sell or store certain weapons. All of the 1993 laws Plaintiffs challenge today were unequivocally grandfathered in, indicating that the State recognized and acknowledged their validity. W. Va. Code § 8-12-5a ("any municipal ordinance in place as of the effective date of this section shall be excepted from the provisions of this section"). Because West Virginia law specifically provides for Charleston's gun laws, Plaintiffs cannot point to any "conflict" or "inconsistency" between West Virginia law and the challenged ordinances. In sum, Charleston's ordinances regulating handguns do not conflict with any West Virginia law, as they were expressly permitted by the West Virginia legislature in 1999. W. Va. Code § 8-12-5a.

The West Virginia Constitution and other State laws fully support the conclusion that Charleston was fully authorized to enact these ordinances in 1993, and to enforce them today. The West Virginia Constitution empowers municipalities to "pass all laws and ordinances relating to its municipal affairs" so long as those laws do not conflict with West Virginia law. W. Va. Const., art. VI, § 39a. West Virginia law permits the "governing body of any municipality" to adopt ordinances relating to "general public health, safety or welfare." W. Va. Code § 8-11-4. The West Virginia Supreme Court holds that ordinances concerning the public health, safety or welfare are presumed to have been "passed in good faith," and that the "legislative body of the municipality acted in the best interest of the community." *Perdue v. Ferguson*, 350 S.E.2d 555, 560 (W. Va. 1986). West Virginia Code § 8-12-5 further provides municipalities with the power to "prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome." As Charleston's handgun ordinances are intended to protect public health, safety and welfare, as well as prevent injury to the public from danger, they fit squarely within the municipal powers enumerated by the State. Accordingly, Plaintiffs' claims that Charleston was not empowered to enact the challenged ordinances must be dismissed pursuant to Rule 12(b)(6).

## IV. CONCLUSION

For all of the foregoing reasons, the Charleston Defendants respectfully request that the Court dismiss Plaintiffs' First Amended Complaint with prejudice.[5]

Respectfully submitted by the
CITY of CHARLESTON, a municipal corporation;
DANNY JONES, Mayor; and
BRENT WEBSTER, Chief of Police

By:     /s/ Ricklin Brown
Benjamin L. Bailey (WV Bar No. 200)
Ricklin Brown (WV Bar No. 500)
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110

Counsel for Defendants City of Charleston, Danny Jones, and Brent Webster

---

[5] While Defendants move solely on these grounds today, should this Court somehow determine that Plaintiffs may proceed with some or all of their claims, Defendants are prepared to defend Charleston's handgun ordinances on the grounds that they are constitutional under the Second Amendment as they do not infringe upon a person's right to possess a handgun in the home for the purpose of self defense. *See Heller,* 554 U.S. at 635; *McDonald,* 130 S.Ct. at 3050. Defendants also are prepared to defend Charleston's handgun ordinances on the grounds that they are constitutional under the West Virginia Constitution, in the event that this case survives the present Motion on standing grounds.