IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WEST VIRGINIA CITIZENS DEFENSE
LEAGUE, INC., *et al.*

       Plaintiffs,

vs.

CITY OF CHARLESTON, *et al.*

       Defendants.

CIVIL ACTION NO. 2:11-cv-0048

(Copenhaver, J.)

**THE CHARLESTON DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF
THEIR MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT AND TO EXCLUDE PLAINTIFFS' RESPONSE BRIEF**

      Defendants City of Charleston, Danny Jones, personally and in his official capacity as the Mayor of the City of Charleston, and Brent Webster, personally and in his official capacity as the Chief of Police of the City of Charleston (collectively "Charleston Defendants" or "Defendants"), by their attorneys, respectfully submit this Reply in further support of their Motion to Dismiss Plaintiffs' First Amended Complaint and Motion to Exclude Plaintiffs' Response Brief.

      In their First Amended Complaint ("FAC"), Plaintiffs allege that many of Charleston's handgun ordinances are unconstitutional and that the City lacked the municipal powers necessary to enact and enforce them. Defendants have moved to dismiss all 34 Counts brought against them on the grounds that Plaintiffs lack standing.  In their Response, filed twenty-four days late, Plaintiffs: (i) pointlessly re-state, at length, the deficient allegations of the FAC; (ii) misrepresent the law regarding Second Amendment standing in the Fourth Circuit; and (iii) exceed the page limit by fourteen pages so that they can argue for the merits of their underlying claims, a wasted exercise as Defendants did not move on those grounds.  Plaintiffs' Response does nothing

1

whatsoever to change the unavoidable facts regarding their failure to allege a concrete and particularized, actual or imminent, injury in fact, *Bishop v. Bartlett,* 575 F.3d 419, 423 (4th Cir. 2008), with regard to *any* of their allegations. Accordingly, and for all the reasons set forth in Defendants' Motion to Dismiss, all claims against the Charleston Defendants should be dismissed.

## I. **Plaintiffs Lack Standing.**

In their Motion, Defendants described each individual Plaintiff, as well as the Association Plaintiff, West Virginia Citizens Defense League ("WVCDL"), in order to highlight how each individual entity had failed to plead any sufficient injury in fact. *See* Mot. to Dismiss at 10-12. In Response, Plaintiffs have not explained how the many *non-resident* Plaintiffs, as well as Plaintiffs who have *chosen* not to fill out certain forms in order to purchase handguns, have been "injured" by the ordinances. The residence issue is significant to the standing question. Three of the four individual Plaintiffs, as well as Masada Enterprises LLC, the Plaintiff firearms dealer, *are not Charleston residents. See* FAC at ¶¶ 5-14. Obviously, Charleston is not the only place the Plaintiffs can or do purchase and sell guns. It is possibly not the cheapest place to transfer a gun. However, it is apparently the only municipality in West Virginia that has determined to regulate and monitor the sales of handguns, and is one of four municipalities to forbid the carrying of handguns on City-owned property.[1] This – and not any realized "injury" -- seems to have raised the ire of these out-of-town Plaintiffs and sent them rushing to this Court to raise these issues.

Defendants also argued that Plaintiffs have failed to allege standing with respect to any individual ordinance. Again, Plaintiffs' response does not illuminate any facts alleged in the FAC which support a finding of subject matter jurisdiction in this case. Specifically:

---

[1] In addition to the allegations against South Charleston and Dunbar in this suit, *see* WVCDL's suit against the City of Martinsburg, *et al.,* pending in the Northern District of West Virginia, No. 3:11-cv-00005-JPB.

      A.    ***Plaintiffs lack standing to attack Charleston's handgun registration procedures.*** Plaintiffs challenge Charleston's one handgun per month purchase limit, its 72 hour waiting period to purchase handguns, and the handgun registration requirement. Charleston City Code §§ 18-425, -426, -428. Plaintiffs fail to allege any injury stemming from any one of these procedures: there is no allegation that any Plaintiff has been subject to a waiting period, no allegation that any Plaintiff has tried and failed to purchase more than one handgun in a month, and no real allegation that any Plaintiff has been denied his or her right to keep and bear arms based on these ordinances. Plaintiffs allege that they are "active gun collectors who frequently buy handguns," FAC at ¶ 3; by their own admission, therefore, Charleston's registration requirements, which the United States Supreme Court has deemed "presumptively lawful," *District of Columbia v. Heller,* have not affected their ability to purchase handguns at all. 554 U.S. 570, 626-27 (2010) ("nothing in [the] opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms.")

      B.    ***Plaintiffs lack standing to attack Charleston's carrying prohibitions.*** Plaintiffs challenge Charleston's prohibitions against carrying a weapon without a license, carrying a weapon without a license in the Sternwheel Regatta area for ten days preceding Labor Day, and carrying weapons on City-owned property. Charleston City Code § 78-163, -164, -165. Plaintiffs fail to allege that any one of the individual Plaintiffs or any member of WVCDL has been arrested, prosecuted, fined, imprisoned, or otherwise sanctioned for violation of any of Charleston's carrying ordinances. Nor do Plaintiffs allege any credible, "real and immediate" threat of such repercussions, or even any concrete, specific plan to violate the ordinances. *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 294 (6th Cir. 1997)*, Doe v. Duling,* 782 F.2d 1202, 1205 (4th Cir. 1986). In the absence of such a concrete plan or real threat, these claims must be dismissed. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564 (1992) ("Such 'some day' intentions – without any

description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require.")

      C.    ***Plaintiffs lack standing to attack Charleston's definition of "record".*** Perhaps most glaringly deficient is Plaintiffs' challenge to Charleston's prohibition on the purchase of a handgun by a customer who has received voluntary mental health treatment or who has any criminal charge for which a warrant or indictment is pending. Charleston City Code §§ 18-421 and 18-428.  As Defendants stressed in their Motion – an observation Plaintiffs completely failed to respond to in their brief -- the Complaint is wholly devoid of any allegation that any individual Plaintiff, or any member of WVCDL, either (a) suffers from a mental illness for which he or she is seeking voluntary mental health treatment, or (b) has criminal charges for which a warrant or indictment is currently pending.  The Complaint is further devoid of any allegation that any such person intends to purchase a firearm in Charleston.  Accordingly, these Counts must be dismissed.

      Instead of addressing the gaping holes in their allegations of "injury", Plaintiffs attempt to persuade the Court that the law of standing was radically affected by the decisions in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) and *Mobil Oil Corp. v. Atty Gen. of Va.,* 940 F.2d 73 (4th Cir. 1991).  This argument fails as neither case significantly altered the law of standing, which was accurately set forth in Defendants' Motion.

      *MedImmune's* dicta regarding threatened government action does not affect the standing analysis; it simply states that a party need not violate a law to establish standing to challenge it. 549 U.S. at 766.  Defendants do not contend that Plaintiffs should violate Charleston's laws in order to challenge them in this Court, but Plaintiffs must allege a credible threat of prosecution. *See Duling,* 782 F.2d at 1205.  In *Mobil Oil,* the Fourth Circuit found standing existed because an "actual and well-founded fear" – absent in this case -- had been shown. 940 F.2d at 76.

4

In support of their reliance on *Mobil Oil*, Plaintiffs wrongly state that the Fourth Circuit has since "rejected" its decision in *Doe v. Duling,* 782 F.2d 1202 (4th Cir. 1986). Pls. Br. at 5. To the contrary, the Fourth Circuit and district courts within it have continued to cite *Duling* for the "real and immediate" threat of prosecution standard since *Mobil Oil. See, e.g. Eckstein v. Melson,* 18 F.3d 1181, 1183 n.6 (4th Cir. 1994); *Falwell v. City of Lynchburg,* 198 F.Supp. 2d 765, 780 (W.D. Va. 2002). As Defendants have shown, no such "credible threat" or "well-founded fear" exists here.

Extending their implausible analytical leaps even further, Plaintiffs posit that the "loss of Second Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Pls. Br. at 5. Plaintiffs ostensibly rely on *United States v. Chester,* 628 F.3d 673 (4th Cir. 2010), for the notion that First and Second Amendment cases employ the same standing analysis. However, *Chester* was *not* a case about standing, and announced the standard of review *only* in the context of reviewing the merits of a law that supposedly burdened constitutionally-protected conduct. *See Chester,* 628 F.3d at 682. As such, Plaintiffs' reliance on cases concerning the standard of review when First Amendment rights are at issue is inappropriate, and there is no basis on which to apply this standard.

When the appropriate standard is applied, *see Duling,* 782 F.2d at 1205, *Lujan,* 504 U.S. at 564, it is clear that the claims against the Charleston Defendants must be dismissed for Plaintiffs' failure to allege any facts sufficient to support a credible injury in fact.[2]

## II. Charleston was Empowered to Enact the Subject Ordinances.

---

[2] Plaintiffs devote much of their Response to a defense of their underlying claims regarding the alleged deficiencies of Charleston's handgun ordinances. These arguments are wholly unresponsive to any argument raised in Defendants' Motion, which focused solely on the issues of standing and municipal powers and only reserved the right to defend the ordinances on another day should the Court deny their Motion. As such, Plaintiffs' arguments concerning their underlying claims should be disregarded.

Plaintiffs allege in the FAC that Charleston has no "municipal authority" to enact and enforce ordinances restricting handgun access. FAC at ¶¶ 88-95. Defendants have moved to dismiss the Counts based on this theory, as the West Virginia Constitution and other State laws support the City's rights in this regard. *See* Mot. to Dismiss at 18-19, citing W. Va. Const.*,* art. VI, § 39a; W. Va. Code § 8-11-4.

Plaintiffs' Response does nothing to effectively counter Defendants' position. Plaintiffs recite the language of § 8-11-4(b), purportedly to illustrate the limits of the City's powers, but say nothing about how the regulation of handguns would not logically fall within that statute's grant of authority to enact "technical codes dealing with general public health, safety or welfare, or a combination of the same." Plaintiffs then misconstrue Defendants' reliance on the grandfather clause of § 8-12-5a, which Defendants offered as an indication that the legislature was aware of, and had not objected to, Charleston's handgun restrictions. Most confounding is Plaintiffs' assertion that, if Charleston were truly empowered to regulate handguns, it would also necessarily have "adopt[ed] a municipal ordinance requiring a person to have a prescription in order to purchase cold medicines containing pseudophedrine or other precursors of methamphetamine in order to combat the allegedly growing public health and safety problem of methamphetamine laboratories." Pls. Br. at 14. Defendants need not explain why this hypothetical law, which would implicate a host of concerns not at issue here, does not currently exist in order to defend the ordinances they have relied on to promote safety in Charleston for seventeen years.

### III. Plaintiffs Have Not Met the "Excusable Neglect" Standard Required to Overcome the Fact that they Filed their Response Brief Twenty-four Days Late.

Although Defendants have replied to Plaintiffs' arguments today, Defendants maintain that Plaintiffs' entire responsive pleading should be excluded from the Court's consideration. On May 3, 2011, when Plaintiffs had not yet filed any brief in response to their Motion to Dismiss, the

Charleston Defendants filed a Motion to Exclude any Response to their Motion under Federal Rule of Civil Procedure 6(b), on the grounds that Plaintiffs were demonstrably aware of, and had no excuse for missing, the filing deadline which had passed twenty-two days prior. Defendants acknowledged in that Motion that, in response to Plaintiffs' counsel's representation that the Response would be filed April 29, 2011, they had agreed not to oppose an extension. Two days later, on May 5, 2011, Plaintiffs filed their 34-page responsive pleading to the Motion to Dismiss.

Also on May 5th, Plaintiffs filed a Motion to Extend Page Limit and Time to Respond to the underlying Motion. As Defendants explained in their Motion to Exclude, in order to excuse their twenty-four day delay, Plaintiffs would need to demonstrate "excusable neglect," Fed. R. Civ. Proc. 6(b)(1)(b), a standard which considers several factors, the most important of which is the reason for the party's omission. *Bredell v. Kempthorne,* No. 07-2137, 290 Fed. Appx. 564, 565 (4th Cir. Aug. 25, 2008).

In their Motion, Plaintiffs represent that the retroactive extension and permission to file an additional fourteen pages should be granted "[i]n order to deal with common questions of law and fact raised in the several pending motions to dismiss, to promote the interests of substantial justice, and to accommodate unforeseen technical difficulties and delays affecting counsel." Plaintiffs submit no evidence or further argument in support of the Motion. Plaintiffs neglect to mention that they *brought* this suit, and *chose* to sue *three* cities (along with the cities' Mayors and Chiefs of Police) in one action. Competing scheduling demands were inevitable and Plaintiffs should have anticipated them. As to their remaining excuses, they raise no arguments in support of the supposed justicial interests, and Defendants and the Court are simply left to wonder at the nature of the mysterious technical difficulties and delays.

Were it Plaintiffs' only infraction, Defendants might be indifferent to Plaintiffs' request for a page extension, as the vast majority of Plaintiffs' pleading is unresponsive to Defendants'

Motion and did not warrant a reply. Defendants respectfully submit, however, that the requests for both page and time extensions be denied and Plaintiffs' brief excluded from consideration. Plaintiffs apparently believe that they are entitled to file their pleadings in whatever format they like, whenever they choose, so long as they include a whimsical *ipse dixit* in support thereof. They have acted in flagrant disregard of the Federal Rules and this Court's authority. Even the "dog ate my homework" excuse (more factually specific than the excuses feebly offered by Plaintiffs, though typically absent from such requests in this age of e-filing) should only suffice for perhaps twenty-four hours of delay. A twenty-four *day* delay with no excusable neglect shown should not be permitted.

For these reasons and all those set forth in Defendants' Motion to Exclude, Defendants respectfully request that Plaintiffs' Response be excluded and/or stricken, and that their Motion to Extend Page Limit and Time to Respond be denied.


Respectfully submitted by the
CITY of CHARLESTON, a municipal corporation;
DANNY JONES, Mayor; and
BRENT WEBSTER, Chief of Police


                /s/ Ricklin Brown
              Benjamin L. Bailey (WV Bar No. 200)
              Ricklin Brown (WV Bar No. 500)
              Bailey & Glasser, LLP
              209 Capitol Street
              Charleston, West Virginia 25301

              Counsel for Defendants City of Charleston, Danny
              Jones, and Brent Webster

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WEST VIRGINIA CITIZENS DEFENSE
LEAGUE, INC., *et al.*

      Plaintiffs,

vs.                            CIVIL ACTION NO. 2:11-cv-0048

                                    (Copenhaver, J.)

CITY OF CHARLESTON, *et al.*

      Defendants.

### CERTIFICATE OF SERVICE

      I, Ricklin Brown, herby affirm that on this date, May 16, 2011, I caused the foregoing **THE CHARLESTON DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND TO EXCLUDE PLAINTIFFS' RESPONSE BRIEF** to be served on the following attorneys with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James M. Mullins, Jr.
The Law Offices of James M. Mullins, Jr., PLLC
101 North Kanawha Street, Suite 401
Beckley, West Virginia 25801

W. Michael Moore
Moore & Biser, PLLC
317 Fifth Avenue
South Charleston, West Virginia 25303

Webster J. Arceneaux, III
Lewis, Glasser, Casey & Rollins, PLLC
P.O. Box 1746
Charleston, West Virginia 25326

                                        /s/ Ricklin Brown
                                      Benjamin L. Bailey (WV Bar No. 200)
                                      Ricklin Brown (WV Bar No. 500)
                                      Bailey & Glasser, LLP
                                      209 Capitol Street
                                      Charleston, West Virginia 25301

                                      Counsel for Defendants City of Charleston, Danny Jones, and Brent Webster