IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

West Virginia Citizens Defense League, Inc.,
    *et al.*,

                Plaintiffs,

                    v.

City of Charleston, *et al.*,

                Defendants

Civil Action No.: 2:11-cv-48

(Copenhaver, J.)

## PLAINTIFFS' RESPONSE AND OBJECTIONS TO

## PROPOSED *PULLMAN* ABSTENTION

    Plaintiffs, by and through their undersigned counsel, respectfully submit the following in response and opposition to this Honorable Court's proposed *Pullman* abstention. [Doc. 36].

## I. INTRODUCTION

    On July 1, 2011, this Honorable Court entered a Memorandum Opinion and Order, [Doc. 36], in which it raised *sua sponte* the question of whether it should abstain or defer action on Plaintiffs' state law claims against the Defendants under the *Pullman* abstention doctrine, *see Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941), and directed the parties to provide supplemental briefing respecting applicability of the *Pullman* abstention doctrine.

## II. DEFENDANTS HAVE FAILED TO ADEUATELY DEMONSTRATE THAT

## KEY QUESTIONS OF STATE LAW ARE UNSETTLED AND

## FAIRLY OPEN TO INTERPRETATION

*Pullman* abstention is not appropriate in this matter because, to an extent that state law would grant Plaintiffs the relief they seek, the applicable state law is sufficiently clear and not fairly open to interpretation.

> In the application of the abstention doctrine, "no principle has found more consistent or clear expression than that the federal courts should not adjudicate the constitutionality of state enactments ***fairly open to interpretation*** until the state courts have been afforded a reasonable opportunity to pass upon them."

*AFA Distributing Co., Inc. v. Pearl Brewing Co.*, 470 F.2d 1210, 1213 (4th Cir. 1973) (*quoting Harrison v. NAACP*, 360 U.S. 167, 176 (1959)) (emphasis added).

### A. State Law Strictly Construing of Municipal Powers Not in Dispute.

West Virginia law places a heavy burden on municipalities claiming a power.  None of the Defendants seriously dispute the extensive body of case law from the West Virginia Supreme Court of Appeals strictly construing municipal powers.  Rather, they make varying arguments that they have met the exacting requirements imposed by West Virginia law.

 "A municipal corporation possesses no inherent police power. It has only such regulatory authority as has been expressly or impliedly delegated to it by the Legislature." Syllabus Point 1, *State ex rel. Kelley v. City of Grafton*, 87 W.Va. 191, 104 S.E. 487 (1920). "A statutory grant of power to a municipal corporation will be strictly construed[.]" *Law v. Phillips*, 136 W.Va. 761, 778-79, 68 S.E.2d 452, 462 (1952).

> A municipal corporation is a creature of the State, and can only perform such functions of government as may have been conferred by the Constitution, or delegated to it by the law-making authority of the State. It has no inherent powers, and only such implied powers as are necessary to carry into effect those expressly granted.

Syllabus Point 1, *Brackman's Inc., v. City of Huntington*, 126 W.Va. 21, 27 S.E.2d 71 (1943).

> Municipalities have no inherent power with regard to the exercise of the functions of their government. Such power depends ***solely*** upon grants of power by Acts of the Legislature, and the Legislature may at any time modify, change or withdraw any power so granted by general law in conformance with the provisions of the Constitution, Article VI, Section 39(a).

Syllabus Point 2, *State ex rel. Alexander v. County Court of Kanawha County*, 147 W.Va. 693,

130 S.E.2d 200 (1963) (emphasis added).

> A municipal corporation has only the powers granted to it by the legislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If ***any*** reasonable doubt exists as to whether a municipal corporation has a power, the power ***must*** be denied.

Syllabus Point 2, *State ex rel. City of Charleston v. Hutchinson*, 154 W.Va. 585, 176 S.E.2d 691

(1970) (emphasis added).

It is under *Hutchinson* that a municipality bears the same heavy burden the government bears in a criminal case: the necessity of proving its case ***beyond a reasonable doubt***. *Hutchinson's* reasonable doubt standard—the apex of Dillon's Rule—is, by all accounts, a heavy burden.  However, in both criminal cases and cases questioning attempted exercises of power by municipalities under West Virginia law, holding the government to this high standard is an absolute necessity to preserve individual liberty.  Just as there have been and undoubtedly will be in the future high-profile criminal cases resulting in highly-publicized, hotly-debated verdicts of acquittal, there have been and likely will continue to be cases in which municipalities may find themselves without the proper legal authority under state law to undertake laudable programs. The delegations of power to municipalities under W.Va. Code § 8-12-5 and many other sections

of the West Virginia Code specify literally hundreds of municipal powers in painstaking detail. Regardless of the issue at hand, where a municipality lacks the power to act under West Virginia law, its remedy is not to usurp power unto itself and defend its actions in court with fanciful legal theories; its remedy is to seek appropriate legislation from the Legislature—whether in an issue-specific, piecemeal fashion (as is generally the case) or perhaps persuade the Legislature to move West Virginia toward a true system of municipal home rule.  Regardless, the Defendants and the other 228 municipalities in this state must abide by the laws of this state, just like the plaintiffs.

Given the abundant body of case law Plaintiffs have cited in support of their arguments for the strict construction of municipal powers under West Virginia state law, none of the Defendants have advanced the only possible remaining argument to justify their ordinances—Professor Bastress's rather exotic and novel theory that, if only the West Virginia Supreme Court of Appeals would reverse nearly its entire body of municipal powers case law, a 75-year-old state constitutional amendment and a 42-year-old Municipal Code could finally have breathed into them the vitality that their authors must have desired.  *See generally,* Robert M. Bastress, Jr., *Localism and the West Virginia Constitution*, 109 W.Va. L. Rev. 683 (2007); Robert M. Bastress, Jr., *Constitutional Considerations for Local Government Reform in West Virginia*, 108 W.Va. L. Rev. 125 (2005).  Under this theory—which Professor Bastress concedes is not the prevailing interpretation of West Virginia's courts, *Localism*, 109 W. Va. L. Rev. at 702 ("the Supreme Court has continued to recite Dillon's Rule and has yet to recognize a clearly stated vision for municipal home rule in West Virginia")—W.Va. Code § 8-12-5(44) would (Finally!) be construed as a broad, general delegation of the police power of the state to municipalities. This theory, of course, ignores dozens of other legislative grants of authority that would appear to fall within the general construction of the police power of the state, which would be redundant

4

and completely unnecessary as a matter of law if, in fact, this broad construction of municipal powers is ever adopted by West Virginia's courts.[1]

    *B. City Property Carry Bans Fail West Virginia's Rigorous Test of Municipal Authority.*

    All three sets of Defendants have enacted and are enforcing what may collectively be referred to as "city property carry bans" of slightly differing applicability in each city.[2]  All three sets of Defendants argue that they are permitted to adopt and enforce these ordinances under W.Va. Code § 8-12-5(16):

---

[1] "It is presumed the legislature had a purpose in the use of every word, phrase and clause found in a statute and intended the terms so used to be effective, wherefore an interpretation of a statute which gives a word, phrase or clause thereof no function to perform, or makes it, in effect, a mere repetition of another word, phrase or clause thereof, must be rejected as being unsound, if it be possible so to construe the statute as a whole, as to make all of its parts operative and effective." Syllabus Point 7, *Ex parte Watson*, 82 W.Va. 201, 95 S.E. 648 (1918).

"It is always presumed that the legislature will not enact a meaningless or useless statute." Syllabus Point 4, *State ex rel. Hardesty v. Aracoma-Chief Logan No. 4523, Veterans of Foreign Wars of the United States, Inc.*, 147 W. Va. 645, 129 S.E.2d 921 (1963).

"It has been a traditional rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning." *State ex rel. Johnson v. Robinson*, 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979).

[2] It is Plaintiffs' view that, for the purposes of the statutory validity of the challenged city property carry bans, the slightly differing range of applicability of each of the three ordinances is irrelevant.  However, if this Court (or the West Virginia Supreme Court of Appeals on hearing a certified question of law) found the challenged ordinances to be valid as a matter of state statutory law, the court would then need to evaluate Plaintiffs' constitutional challenges, in which case, the broader the ordinance, the greater its impact on Plaintiffs' constitutionally-protected right to bear arms and the more likely the ordinance is overbroad in violation of W.Va. Const. Art. III, § 22. *See* footnote 3, *infra*.

In addition to the powers and authority granted by: (i) The Constitution of this state; (ii) other provisions of this chapter; (iii) other general law; and (iv) any charter, and to the extent not inconsistent or in conflict with any of the foregoing except special legislative charters, every municipality and the governing body thereof shall have plenary power and authority therein by ordinance or resolution, as the case may require, and by appropriate action based thereon:

\*       \*       \*

(16) To arrest, convict and punish any individual for carrying about his or her person any revolver or other pistol, dirk, bowie knife, razor, slingshot, billy, metallic or other false knuckles or any other dangerous or other deadly weapon of like kind or character[.]

*Id.*

Under a different legal regime, the question of whether the challenged city property carry bans are valid as a matter of state statutory law might be a very close question. However, under West Virginia's extensive body of case law strictly construing municipal powers, the defenses of all three defendant groups must fail.

As a matter of state statutory law, Plaintiffs contend the power granted by W.Va. Code § 8-12-5(16) to municipalities to completely prohibit the bearing of arms on or about the person is a binary power that municipalities may not exercise *a la carte*. Each of the challenged city property carry bans is confined to certain descriptions of public property owned or controlled by each defendant group.

A separate statute, W.Va. Code § 61-7-14, authorizes property owners to prohibit carrying weapons on their premises but limits criminal penalties to those who are first apprehended violating the weapons restriction imposed by the property owner and then refuse to either temporarily disarm or leave the premises. None of the challenged city property carry bans falls within the ambit of W.Va. Code § 61-7-14 because each ordinance clearly and unambiguously attaches criminal penalties to bearing arms in city buildings and parks and certain other proscribed areas. In fact, the Dunbar and South Charleston defendants have expressly

disclaimed any reliance upon W.Va. Code § 61-7-14. [Doc. 31] at 11; [Doc. 32] at 11. Only one of the challenged ordinances, Dunbar City Code § 545.13, has any provision mandating the posting of warning signs at the entrances of places where the challenged ordinance prohibits individuals from bearing arms.

### C. Charleston's Handgun Sales Ordinances Are Clearly Invalid Under

### West Virginia's Rigorous Test of Municipal authority..

Charleston's "handgun sales ordinances" clearly are without proper state statutory authority under West Virginia law. Despite retaining some of the best legal representation available in our state, the best argument the Charleston Defendants can advance to defend their handgun sales ordinances against Plaintiffs' state statutory claims is the simply absurd argument that, somehow, Charleston's handgun sales ordinances are authorized by the statute permitting the city to

> adopt, by ordinance, building codes, housing codes, plumbing codes, sanitary codes, electrical codes, fire prevention codes, or any other technical codes dealing with general public health, safety or welfare, or a combination of the same[.]

W. Va. Code § 8-11-4(b). By its own plain language, this subsection makes unmistakably clear that it has a limited application to

> building codes, housing codes, plumbing codes, sanitary codes, electrical codes, fire prevention codes, or any other technical codes dealing with general public health, safety or welfare, or a combination of the same[.]

*Id.*

Had the question of whether the Charleston Defendants have the requisite affirmative statutory authority under West Virginia law to enact and enforce the handgun sales ordinances been before a less serious forum, the Charleston Defendants' argument would be laughable. However, before this Honorable Court, the Charleston Defendants' absurd argument regarding

the basis of their statutory authority to enact and enforce their handgun sales ordinances must be taken for what it is: a tacit admission that they have been and are continuing to usurp powers they have not been granted by the West Virginia Legislature and which the courts simply cannot grant them under West Virginia's extensive, settled body of municipal law.  Rather than sharpen their argument in response to Plaintiffs' original briefing of this issue, the Charleston Defendants chose to use their reply brief, [Doc. 33] at 2, to attack several of the individual plaintiffs who do not live within Charleston city limits—as if, somehow, the United States Constitution and the West Virginia Constitution are dead letters in the City of Charleston.[3]

## III. CERTIFICATION OF QUESTIONS OF LAW IS
## PREFERRED TO *PULLMAN* ABSTENTION

If this Honorable Court finds that the pending questions of state law appear unsettled, it should propound appropriate certified questions of law to the West Virginia Supreme Court of Appeals in lieu of exercising *Pullman* abstention.   In *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997), the Supreme Court suggested that, where available, state certification procedures be used instead of *Pullman* abstention. The Supreme Court explained:

---

[3]  While the Charleston Defendants chose to attack the individual plaintiffs in their reply brief, they did so without any citations to legal authority.  Given the potential for future argument by the Charleston Defendants that the individual plaintiffs who reside outside Charleston city limits somehow have no real injury resulting from the challenged ordinances, Plaintiffs call the attention of opposing parties, counsel, and this Honorable Court to the recent decision in *Ezell v. City of Chicago*, ___ F.3d ___, 2011 WL 2623511 (7th Cir. July 6, 2011), in which the court rejected the City of Chicago's claims that its ordinance completely prohibiting private firing ranges within the city did not prejudice the plaintiffs because the plaintiffs could reasonably access firing ranges located outside the city. *Id.* at *8-9. Following the lead of our circuit in *U.S. v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010), and other circuits that have adopted the same position, the *Ezell* court declined to use the "undue burden" test from the Supreme Court's abortion jurisprudence and instead decided to "adapt First Amendment doctrine to the Second Amendment context[.]" *Ezell*, 2011 WL 2623511 at *15.

Certification today covers territory once dominated by a deferral device called "*Pullman* abstention" . . . . Designed to avoid federal-court error in deciding state-law questions antecedent to federal constitutional issues, the *Pullman* mechanism remitted parties to the state courts for adjudication of the unsettled state-law issues. If settlement of the state-law question did not prove dispositive of the case, the parties could return to the federal court for decision of the federal issues. Attractive in theory because it placed state-law questions in courts equipped to rule authoritatively on them, *Pullman* abstention proved protracted and expensive in practice, for it entailed a full round of litigation in the state court system before any resumption of proceedings in federal court.

Certification procedure, in contrast, allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response.

*Id.* at 75-76 (internal citations omitted).  West Virginia has adopted the Uniform Certification of Questions of Law Act, W.Va. Code §§ 51-1A-1 *et seq.*; *see also* W.Va. Rev. R. App. P. 17(b) (2010), which is substantially similar to Arizona's certification law. *See Arizona*, 520 U.S. at 51 n. 5.  Under the Uniform Certification of Questions of Law Act:

The supreme court of appeals of West Virginia may answer a question of law certified to it by any court of the United States . . . if the answer may be determinative of an issue in a pending cause in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state.

W.Va. Code § 51-1A-3.  The West Virginia Supreme Court of Appeals frequently answers this Court's certified questions of law. E.g., *Harper v. Jackson Hewitt, Inc.*, 227 W.Va. 142, 706 S.E.2d 63 (2010); *Camden-Clark Memorial Hosp. Ass'n v. St. Paul Fire and Marine Ins. Co.*, 224 W.Va. 228, 682 S.E.2d 566 (2009); *American Modern Home Ins. Co. v. Corra*, 222 W.Va. 797, 671 S.E.2d 802 (2008).

Assuming *arguendo* that there are unsettled questions of state law that might merit resolution via certified questions of law to the West Virginia Supreme Court of Appeals, it is not clear that this case is ripe for immediately propounding certified questions of law to the West Virginia Supreme Court of Appeals. "A certification order must contain . . . [t]he facts relevant

to the question, showing fully the nature of the controversy out of which the question arose[.]"
W.Va. Code § 51-1A-6(a)(2).  Plaintiffs' state law claims involve both purely legal issues
concerning the state statutory validity of the challenged ordinances as well as claims that the
challenged ordinances are unconstitutional under the West Virginia Constitution.[4]   While
Plaintiffs' statutory validity claims in Counts 5, 8, 11, 26, 29, 30, 31, 34, 37, and 40, require no
factual determinations to resolve the purely legal questions presented, the state constitutional
issues presented in Counts 4, 7, 10, 24, 25, 28, 33, 36, and 39, may involve some questions of
fact pertaining to various theories offered by the Defendants' *amici*. *See generally,* Brief of
Amicus Curiae Brady Center to Prevent Gun Violence in Support of Defendants, [Doc. 35].
Plaintiffs have yet to test the evidentiary basis for the Brady Center's arguments, as applied to
the specific ordinances at issue and their administration by the Defendants.[5]   Thus, certifying
questions involving the constitutionality of the challenged ordinances to the West Virginia
Supreme Court of Appeals at this particular time, before all the relevant facts are determined,
would likely present nonjusticiable, academic, hypothetical questions well outside the bounds of
the courts' respective jurisdiction.

Despite the existence of the *Pullman* abstention doctrine and its subsequent evolution to
include the use of certified question statutes in the overwhelming majority of states, including

---

[4]  A judgment in Plaintiffs' favor on the state law claims against each of the challenged ordinances would moot their Federal constitutional claims, as it is well-settled that this Court "need not reach the [Federal] constitutional question if there exists an alternative, nonconstitutional basis for [its] decision." *Hoffman v. Hunt*, 126 F.3d 575, 582 (4th Cir. 1997) (*citing Peters v. Hobby*, 349 U.S. 331, 338 (1955)). *Accord City of Meridian v. So. Bell Tel. & Tel. Co.*, 358 U.S. 639, 641 (1959) ("when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily.") (internal citations omitted); *Meredith v. Talbot County*, 828 F.2d 228, 231 (4th Cir. 1987).  The only federal law claims that would remain if this Court decides Plaintiffs' state law claims in their favor would be Plaintiffs' Privacy Act claims against the Charleston Defendants in Counts 12-15 of the First Amended Complaint.
[5]  At this time, all discovery has been stayed pursuant to this Court's order, [Doc. 34], granting the parties' joint motion to stay discovery, [Doc. 25].

West Virginia, as an alternative to abstention, "federal courts should take care not to burden their state counterparts with unnecessary certification requests." *Boyter v. C. I. R.*, 668 F.2d 1382, 1385 n. 5 (4th Cir. 1981). "Only if the available state law is clearly insufficient should the court certify the issue to the state court." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) (*citing Smith v. FCX, Inc.*, 744 F.2d 1378, 1379 (4th Cir. 1984), *cert. denied*, 471 U.S. 1103 (1985)).

> Certification is a discretionary function and should be utilized with restraint, and the mere difficulty of ascertaining local law does not appear to be an adequate reason for remitting the parties to a state tribunal. Factors to be considered in deciding whether to certify include the closeness of the question; the existence of sufficient sources of state law to permit a principled conclusion; the degree to which considerations of comity are relevant; and the practical limitations of the certification process, such as the delay inherent in beginning another proceeding.

*Miller v. N.R.M. Petroleum Corp.*, 570 F. Supp. 28, 29-30 (N.D. W.Va. 1983) (internal citations omitted).

To the extent there are any novel questions of state law that this Court would be unable to resolve where "there is no controlling appellate decision, constitutional provision or statute of this state," W.Va. Code § 51-1A-3, a West Virginia circuit court would face a similar dilemma and would likely submit appropriate certified questions of law to the Supreme Court of Appeals pursuant to W.Va. Code § 58-5-2 and W.Va. Rev. R. App. P. 17(a) (2010). Separate state court litigation leading to the same resolution would, as the Supreme Court noted, "prove[] protracted and expensive in practice, for it entail[s] a full round of litigation in the state court system[,]" and is thus disfavored where certification is available. *Arizona*, 520 U.S. at 76. For these reasons, Plaintiffs respectfully submit that certification appropriate questions of law to the West Virginia Supreme Court of Appeals by this Court is the preferred manner of resolving any open questions of state law and that *Pullman* abstention is not appropriate in this case.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Honorable Court (1) not abstain or defer from adjudicating Plaintiffs' state law claims against the Defendants, (2) deny each Defendant group's pre-answer motion to dismiss and direct the Defendants to answer Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(a)(4)(A), and (3) lift the stay of discovery to permit the parties to fully develop the factual record to the extent necessary to resolve the pending claims (including, if necessary, certification of appropriate questions of law to the West Virginia Supreme Court of Appeals after the factual record is properly developed). To the extent there may be unsettled questions of state law, Plaintiffs submit that, rather than exercising *Pullman* abstention, the more appropriate course of action is to certify appropriate questions of law to the West Virginia Supreme Court of Appeals once the entire factual basis of the Defendants' defenses of the constitutionality of the challenged ordinances is clearly established.

Dated this 14th day of July, 2011,


    s/ James M. Mullins, Jr.
James M. Mullins, Jr.        (WV State Bar # 11129)
            Attorney for All Plaintiffs
The Law Offices of James M. Mullins, Jr., PLLC
101 North Kanawha Street, Suite 401
Beckley, WV 25801
Telephone: 304-929-3500 (o)/304-687-5492 (c)
FAX: 304-929-3503
E-mail: jim@mullinslawoffices.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2011, I electronically filed the foregoing document with the Clerk of the Court, which will send electronic notification of such filing to the following CM/ECF participants:

Benjamin L. Bailey
Ricklin Brown
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
Attorneys for City of Charleston, Danny Jones, and Brent Webster

Webster J. Arceneaux, III
Spencer D. Elliott
Lewis Glasser Casey & Rollins, PLLC
PO Box 1746
Charleston, WV 25326
Attorneys for City of Dunbar, Jack Yeager, and Earl Whittington

W. Michael Moore
Alicia A. Deligne
Moore & Biser PLLC
317 Fifth Avenue
South Charleston, WV 25303
Attorneys for City of South Charleston, Frank Mullens, and Brad Rinehart

Ashley W. French
Huddleston Bolen LLP
PO Box 3786
Charleston, WV 25337
Attorney for *amicus curiae* Brady Center to Prevent Gun Violence


s/ James M. Mullins, Jr.
James M. Mullins, Jr.        (WV State Bar # 11129)
Attorney for All Plaintiffs
The Law Offices of James M. Mullins, Jr., PLLC
101 North Kanawha Street, Suite 401
Beckley, WV 25801
Telephone: 304-929-3500 (o)/304-687-5492 (c)
FAX: 304-929-3503
E-mail: jim@mullinslawoffices.com