IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| WEST VIRGINIA CITIZENS DEFENSE LEAGUE, INC., *et al.* <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF CHARLESTON, *et al.* <br><br> Defendants. | CIVIL ACTION NO. 2:11-cv-0048 <br><br> (Copenhaver, J.) |

**DEFENDANTS' MEMORANDUM IN RESPONSE TO
PLAINTIFFS' OBJECTIONS TO PROPOSED *PULLMAN* ABSTENTION**

Defendants, City of Charleston; Danny Jones, personally and in his official capacity as the Mayor of the City of Charleston; Brent Webster, personally and in his official capacity as the Chief of Police of the City of Charleston; City of South Charleston; Frank A. Mullens, Jr., in his official capacity as the Mayor of the City of South Charleston; Brad L. Rinehart, in his official capacity as the Chief of Police of the City of South Charleston; City of Dunbar; Jack Yeager, in his official capacity as the Mayor of the City of Dunbar; and Earl Whittington, in his official capacity as the Chief of Police of the City of Dunbar (collectively "Defendants")[1], respectfully submit this memorandum pursuant to this Court's Order that Defendants file a consolidated response to Plaintiffs' *Pullman* abstention brief.

Although Defendants vehemently disagree with Plaintiffs' position that West Virginia law does not allow the Defendants to impose limited restrictions on the use of weapons within

---

[1] Defendants will refer to the City of Charleston, Mayor Jones and Chief Webster as the "Charleston Defendants," to the City of South Charleston, Mayor Mullens and Chief Rinehart as the "South Charleston Defendants," and to the City of Dunbar, Mayor Yeager and Chief Whittington as the "Dunbar Defendants".

their cities' borders, Defendants concur with Plaintiffs' ultimate conclusion that this Court should not abstain in this matter. The *Pullman* doctrine simply does not apply in this case, as there is no "open question of state law" before the Court. The need for abstention is particularly absent at this juncture, when the Court is considering whether Plaintiffs have adequately alleged Article III standing to bring any of their claims. Accordingly, and for all the reasons discussed below, Defendants respectfully submit that the Court should retain jurisdiction over this case, and determine both the federal and state law issues before it.

## I. Introduction and Background

Plaintiffs, West Virginia Citizens Defense League, Inc. ("WVCDL"), Keith T. Morgan, Elizabeth L. Morgan, Jereomy W. Schulz, Benjamin L. Ellis, and Masada Enterprises LLC, filed this lawsuit on January 24, 2011. In the forty counts of their First Amended Complaint, filed March 16, 2011, Plaintiffs challenge several of the firearms ordinances enacted and currently enforced by the cities of Charleston, South Charleston and Dunbar. In addition to challenges to Charleston's ordinances under specific federal statutes (*e.g.,* the Privacy Act and the Americans with Disabilities Act), Plaintiffs generally attack the ordinances on three fronts: (1) that they violate the Second Amendment of the United States Constitution; (2) that they violate article III, section 22 of the West Virginia Constitution; and (3) that the Defendant cities are not empowered, under the municipal powers granted to them by the State, to enact or enforce the ordinances. The Charleston, South Charleston and Dunbar Defendants have all filed separate motions to dismiss Plaintiffs' First Amended Complaint, which have been fully briefed and are currently pending.[2] This Court has stayed deadlines and discovery pending a ruling on the motions to dismiss. [Docket No. 34]

---

[2] The Charleston Defendants (against whom 34 of the 40 counts are brought) moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that Plaintiffs lacked standing to bring their claims, and

On July 1, 2011, this Court issued a Memorandum Opinion and Order and observed that the Honorable John Preston Bailey, Chief Judge of the United States District Court for the Northern District of West Virginia, is presiding over a substantially similar case in that court, captioned *West Virginia Citizens Defense League, Inc. v. City of Martinsburg,* No. 3:11-0005.[3] On June 17, 2011, Judge Bailey had invited the parties before him to "comment and/or object to" application of the *Pullman* doctrine in that case. Because of the similarity between these actions, this Court invited supplemental briefing on the applicability of the *Pullman* doctrine here, directing Plaintiffs to file their brief no later than July 14, 2011, with Defendants' responsive brief to follow by July 28, 2011. [Docket No. 36]

Plaintiffs timely filed their brief, which stated their opinion that the *Pullman* doctrine should not be applied here because, "to an extent that state law would grant Plaintiffs the relief they seek, the applicable state law is sufficiently clear and not fairly open to interpretation." [Docket No. 37] In support of this position, Plaintiffs argue that the state laws at issue, including but not limited to W. Va. Code §§ 8-11-4 and 8-12-5, "clearly" prohibit the Defendant cities from regulating handguns in the way that the ordinances do.

Defendants agree that the *Pullman* doctrine is not warranted here, but disagree with Plaintiffs' rationale. As Defendants have argued in their briefs supporting their motions to dismiss, the West Virginia Constitution and other West Virginia laws fully support the conclusion that the cities were authorized to pass these ordinances and to continue to enforce them. This issue has been fully briefed, and Defendants did not understand the Court's July 1st

---

that Plaintiffs' theory that Charleston lacks municipal authority to enact and enforce gun restrictions fails as a matter of law. [Docket Nos. 16 & 17]. The Charleston Defendants reserved their right to move for dismissal on the merits of the claims should their threshold arguments fail. Similarly, the South Charleston and Dunbar Defendants moved on the grounds that Plaintiffs lacked standing to sue, and, in the alternative, that Plaintiffs' constitutional arguments fail on the merits and that the cities' codes were lawfully enacted and remain valid. [Docket Nos. 18, 19, 21, 22].

[3] A third WVCDL lawsuit (filed by that organization as well as two individual plaintiffs) is pending in the Northern District of West Virginia before the Honorable Frederick P. Stamp, Jr.: *Campbell et al. v. City of Wheeling et al.,* 5:11-cv-00069-FPS (filed May 11, 2011).

Order to be an invitation for another bite at the apple on the merits of this case. Instead, Defendants will set forth the standards surrounding the *Pullman* doctrine and explain why the unique circumstances to which the doctrine applies are not found here.

## II. *Pullman* Abstentions are to be Rarely Invoked.

The *Pullman* doctrine has its origins in the United States Supreme Court's decision in *Railroad Commission v. Pullman Company,* 312 U.S. 496 (1941). In that case, the Court considered state law and constitutional challenges to a newly enacted order by the Texas Railroad Commission, which would have required that "federal court of equity. . . to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication." 312 U.S. at 500. In abstaining, the Court explained that "[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies," and that a review of case law "reflect[s] a doctrine of abstention appropriate to our federal system whereby the federal courts, exercising a wise discretion, restrain their authority because of scrupulous regard for the rightful independence of the state governments and for the smooth working of the federal judiciary." *Id.* at 500-01.

Courts now apply the *"Pullman* abstention" when a plaintiff brings a federal case that would require the federal court to interpret an unclear state law. *Nivens v. Gilchrist,* 444 F.3d 237, 246 (4th Cir. 2006). "However, federal courts need not abstain on *Pullman* grounds when a state statute is not fairly subject to an interpretation which will render unnecessary adjudication of the federal constitutional questions." *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 237 (1984) (quotation omitted). The abstention serves two primary goals: (1) avoiding constitutional questions when their resolution is unnecessary, and (2) allowing state courts to decide issues of state law. *Nivens,* 444 F.3d at 246, n.6; *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007)

4

(reversing district court's dismissal on abstention grounds because resolution of federal constitutional challenges to South Carolina statutes did not require court to adjudicate difficult questions of state law or disrupt state efforts to establish a coherent policy on a matter of substantial public concern); *see also Va. Office for Prot. & Advocacy v. Stewart,* 131 S. Ct. 1632, 1644 (2011) (Kennedy, J., concurring) ("*Pullman* recognizes the importance of state sovereignty by limiting federal judicial intervention in state affairs to cases where intervention is necessary. If an open question of state-law would resolve a dispute, then federal courts may wait for the resolution of the state-law issue before adjudicating the merits.")

Abstention doctrines, including *Pullman,* "constitute extraordinary and narrow exceptions to a federal court's duty to exercise the jurisdiction conferred on it." *Martin,* 499 F.3d at 363 (quoting *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 728 (1996)); *see also Massey Energy Co. v. Supreme Ct. of Appeals of W. Va.,* No. 2:06-0614, 2007 U.S. Dist. LEXIS 70330 at \*23 (S.D. W. Va. Sept. 21, 2007) (Copenhaver, J.) ("Abstention. . . remains the exception to the rule that federal courts should exercise jurisdiction granted by Congress"); *BlueHippo Funding v. McGraw,* No. 2:07-0399, 2007 U.S. Dist. LEXIS 98314 (S.D. W. Va. Oct. 25, 2007) (Copenhaver, J.) (same). In this case, Congress has conferred jurisdiction over *all* of the claims because, as Plaintiffs pleaded in their First Amended Complaint, the Court has "supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal question claims that they form part of the same case or controversy under Article III of the United States Constitution." Putting aside for purposes of the present discussion that Defendants maintain this Court lacks subject matter jurisdiction over *any* of Plaintiffs' claims due to Plaintiffs' lack of standing, Plaintiffs' invocation of § 1367 was appropriate. *See* 28 U.S.C. § 1367; *Arrington v. City of Raleigh,* 369 Fed. Appx. 420, 423 n.1 (4th Cir. 2010)

5

("District courts have supplemental jurisdiction over state law claims that 'form part of the same case or controversy' as the federal claim supporting removal.")

Consistent with the Supreme Court and Fourth Circuit's directive that the doctrine is to be sparingly invoked, the *Pullman* abstention is rarely applied in this court. *See Medley v. Ginsberg,* 492 F.Supp. 1294 (S.D.W. Va. 1980) (Copenhaver, J.) (denying summary judgment in case involving alleged deprivation of federal constitutional as well as federal and state statutory rights, and refusing to abstain under either *Younger v. Harris,* 401 U.S. 37 (1971)[4] or *Pullman*); *Indus. Maint. Serv., Inc. v. Moore,* 677 F.Supp. 436 (S.D. W. Va. 1987) (Copenhaver, J.) (refusing to abstain in case requesting a permanent injunction enjoining defendants' enforcement of an executive order which prohibited the importation of solid waste into West Virginia for disposal, explaining that the Pullman doctrine "is only applicable where an interpretation by a state court of an ambiguous state law may render a federal constitutional issue moot. . . [h]ere, there is no applicable state law or regulation governing the transportation of solid waste located outside of the boundaries of West Virginia. Moreover, the effect of the executive order is clear on its face," making Pullman unwarranted); *but see Club Ass'n of W. Va., Inc. v. Wise*, 156 F. Supp. 2d 599 (S.D. W. Va. 2001) (abstaining when case required an interpretation of the Limited Video Lottery Act, raising a "potentially divisive conflict among the three branches of State government.")

### III. <u>Abstention due to State Constitutional Issues would be Inappropriate.</u>

Plaintiffs challenge the cities' ordinances under the United States Constitution, the West Virginia Constitution, and West Virginia state law. In his June 17, 2011 Order suggesting that a *Pullman* abstention might be appropriate in the Martinsburg case, Judge Bailey appeared to

---

[4] The *Younger* abstention requires a federal court to abstain from interfering with a pending state proceeding when the considerations of equity, comity and federalism so warrant. *Bean v. Tatum,* 299 Fed. Appx. 243, 246 (4th Cir. 2008).

6

suggest that the differences between the Second Amendment to the United States Constitution and Article III, § 22 of the West Virginia Constitution, could give rise to abstention. *City of Martinsburg,* No. 3:11-0005, slip. Op. at 7 (N.D. W. Va.). Defendants respectfully disagree with this position. The provisions state as follows:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

> A person has the right to keep and bear arms for the defense of self, family, home and state, and for lawful hunting and recreational use.

W. Va. Const. art. III, § 22 (ratified Nov. 4, 1986).

While the provisions are not identical, they are substantially similar, and the West Virginia provision, at twenty-five years old, is neither "unclear" nor "open". In determining whether the challenged ordinances are constitutional under the West Virginia provision, this Court will have the benefit of decades of West Virginia case law interpreting the State's constitutional provision. *See, e.g.* Syl. Pt. 5, *Hartley Hill Hunt Club v. Ritchie County Comm'n,* 220 W. Va. 382, 647 S.E.2d 818 (2007) (article III, section 22 protects a person's right to keep and bear arms for lawful hunting; the clause preserves the State's right, through the exercise of its police power, to enact reasonable laws defining what forms of hunting are lawful); Syl. Pts. 2, 6, *Perito v. County of Brooke,* 215 W. Va. 178, 597 S.E.2d 311 (2004) (relying upon article III, section 22 and *Buckner* to hold that West Virginia Code § 61-7-7, which prohibits certain persons from possessing firearms, applies to all persons who have been convicted in any court of a crime punishable for imprisonment for a term exceeding one year, even when the individual has received an unconditional pardon from the Governor); Syl. Pt. 3, *State ex rel. W. Va. Div. of Natural Resources v. Cline,* 200 W. Va. 101, 488 S.E. 2d 376 (1997) (the provisions of W. Va.

Code § 20-2-5(10), prohibiting the vehicular transportation of a loaded firearm do not violate the right to keep and bear arms for lawful hunting purposes enunciated in article III, section 22); *State v. Daniel,* 182 W. Va. 643, 650, 391 S.E.2d 90, 97 (1990) (allowing jury to infer malice and deliberation from intentional use of a deadly weapon does not violate article III, section 22); Syl. Pt. 4, *State ex rel. City of Princeton v. Buckner,* 180 W. Va. 457, 377 S.E.2d 139 (1988) (West Virginia legislature may, through the valid exercise of its police power, reasonably regulate the right of a person to keep and bear arms in order to promote the health, safety and welfare of all citizens of West Virginia, provided the restrictions or regulations imposed do not frustrate the constitutional freedoms imposed by article III, section 22).

Courts applying *Pullman* are also clear that abstention is not required simply because a similar state constitutional issue is raised in the same case as a federal constitutional claim. *See Nat'l Capital Naturists v. Bd. of Supervisors,* 878 F.2d 128, 133 (4th Cir. 1989) (the "presence of parallel state and federal constitutional claims does not in itself provide sufficient reason for a federal court to abstain"). The Supreme Court addressed this question head on in *Examining Board of Engineers, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572 (1976), which concerned a challenge to a Puerto Rico statute under both the United States and Puerto Rico constitutions. Appellants urged the Court to abstain on the grounds that the Puerto Rico state courts should be permitted to adjudicate the challenged statute under the sections of the Puerto Rico Constitution providing that "No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas," and "No person in Puerto Rico shall be denied the equal protection of the laws". 426 U.S. at 598. The Court refused, reasoning that to "hold that abstention is required because [the challenged statute] might conflict with the cited broad and sweeping constitutional provisions, would convert abstention from an exception

8

into a general rule." *Id.; see also Stephens v. Tielsch,* 502 F.2d 1360 (9th Cir. 1974) (reversing lower court's abstention because it was not proper for a federal court to abstain simply so that the state court could consider a case under a state constitutional provision that was "essentially the mirror of the portion of the federal Constitution at issue," reasoning that, "Since most states have both some form of due process clause and some form of equal protection clause, abstention would be necessary, or at least within the power of the district judge, in nearly every civil rights action"); *see also* Charles Alan Wright & Arthur R. Miller, 17A Fed. Prac. & Proc. Juris. 2d § 4242 (1988) (citing *Examining Board* and explaining that the "proper line appears to be that abstention is in order if the case may turn on the interpretation of some specialized state constitutional provision, but not if the state provision is substantially similar to the federal provision that is the basis of the federal challenge.")

Because the state constitutional provision is substantially similar to the federal provision, and because this Court has the benefit of a fully developed body of West Virginia case law to guide its decision, abstention is not warranted here. The case cited by Judge Bailey concerning the differences between the two constitutional provisions, *Reetz v. Bozanich,* 397 U.S. 82 (1970), is, respectfully, inapposite. *Reetz* concerned a challenge to certain Alaskan fishing laws and regulations under the Equal Protection Clause of the Fourteenth Amendment as well as provisions of the Alaska Constitution which pertained specifically to fishing rights and privileges. The Court held that the district court should have abstained in light of the fact that the provisions of the Alaska Constitution "*have never been interpreted by an Alaska court.*" 397 U.S. at 86 (emphasis added). Moreover, the "constitutional provisions relate to fish resources, an asset unique in its abundance in Alaska. The statute and regulations relate to that same unique

9

resource, the management of which is a matter of great state concern. . . the first judicial application of these constitutional provisions should properly be by an Alaska court." *Id.* at 87.

The *Reetz* distinctions between the constitutional provisions are not found here, where both the federal and West Virginia constitutions, at bottom, grant the right to "keep and bear arms." Again, the West Virginia courts have interpreted Article III, section 22 many times. In addition, the district courts of West Virginia are certainly experienced in interpreting the West Virginia Constitution, including this provision. *See, e.g. Berger v. United States,* 867 F.Supp. 424, 427 n.3 (S.D. W. Va. 1994) (Copenhaver, J.) (observing that defendant's conviction for possession of a firearm was not unlawful under W. Va. Const. art. III, § 22); *United States v. Stump,* 784 F.Supp. 326 (N.D. W. Va. 1992) (relying on W. Va. Const. art. III, § 22 as well as state law to grant motion to dismiss indictment charging knowing possession of a firearm)*; see also Gilmore v. Bostic,* 659 F.Supp. 2d 755 (S.D. W. Va. 2009) (Copenhaver, J.) (interpreting claim based upon Due Process Clause of West Virginia Constitution); *Westfield Ins. Co. v. Paugh,* 390 F.Supp. 2d 511 (N.D. W. Va. 2005) (analyzing "single subject" rule found in W. Va. Const. art. VI, § 30).

Abstention is unwarranted here for the additional reason that the case presents a fundamental and vital issue implicating both the federal constitution – which this Court has a right and duty to interpret – and the state constitution. In the one case Defendants have located considering *Pullman* abstention in a gun control context where both the state constitutional provision and Second Amendment were alleged to be violated, the Seventh Circuit refused to condone abstention, explaining:

> The states [in amici briefs] argue that the district court should have abstained because the federal court may not construe a state constitutional provision when the state court has not yet had the opportunity to construe that provision. . . The states admit that abstention is not required when the state constitutional provision

>parallels the federal constitutional provision. However, relying on *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, . . . they assert that the state constitutional provision involved in this case is unique, and thus, the federal court should not have prematurely usurped the state's prerogative to interpret its own constitution.
>
>*We disagree.* Since abstention is not mandatory, the federal court must determine whether abstention is appropriate in a particular case. 1A Moore's Federal Practice 0.203[1] at 2105 (1977). Federal courts have been reluctant to abstain when fundamental rights such as voting, racial equality or rights of expression are involved. *Id.* at 2111-12. *We consider the issue of gun control of vital importance to every citizen and, for this reason, do not believe that abstention is any more appropriate in this case than in cases where fundamental rights are involved. Moreover, the purpose of the abstention doctrine is to minimize the conflict between the federal and state systems.* <u>Railroad Comm'n v. Pullman Co.,</u> *312 U.S. 496, 85 L. Ed. 971, 61 S. Ct. 643 (1941). There is no conflict here, for [defendant] voluntarily removed this case to federal court. Accordingly, we find that the abstention doctrine has no relevance.*

*Quilici v. Morton Grove,* 695 F.2d 261, 265 n.2 (7th Cir. 1982) (emphasis added).

As in *Quilici,* Defendants (and Plaintiffs) here wish to have this matter adjudicated in federal court, and the vital issue of gun control is properly before this tribunal. As such, abstention here "has no relevance." For this reason, and because of the substantial similarity between the two constitutional provisions as well as the fact that the West Virginia provision is neither unclear nor unexamined, this Court should retain jurisdiction of the West Virginia constitutional issues.

### IV. <u>Abstention due to State Statutory Issues is also Unnecessary.</u>

Just as the state constitutional issues do not require the unique perspective of the state courts, neither does analysis of the municipal powers statutes under which the Defendant cities' authority to enact and enforce the challenged ordinances is found.

The Supreme Court clearly holds that abstention is unwarranted in these circumstances. "Where there is not ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim." *Wisconsin v. Constantineau,* 400 U.S. 433, 439 (1971). Indeed, "[i]f the statute is not obviously susceptible of a limiting construction, then

11

even if the statute has never been interpreted by a state tribunal. . . it is the duty of the federal court to exercise its properly invoked jurisdiction." *Houston v. Hill,* 482 U.S. 451, 468 (1987) (quoting *Harman v. Forssenius,* 380 U.S. 528, 535 (1965)).

No party alleges any "ambiguity" or susceptibility to a "limiting construction" with regards to the municipal powers statutes. As Defendants explained in their respective motions to dismiss, the West Virginia Constitution empowers municipalities to "pass all laws and ordinances relating to its municipal affairs" so long as those laws do not conflict with West Virginia law. W. Va. Const., art. VI, § 39a. Further, West Virginia law permits the "governing body of any municipality" to adopt ordinances relating to "general public health, safety or welfare." W. Va. Code § 8-11-4. In their briefs regarding the pending motions to dismiss, both parties relied on several West Virginia cases analyzing these powers, rendering any question of whether they are somehow ambiguous or insufficiently explored by the state courts moot. *See* Charleston Defs.' Mem. in Support of Motion to Dismiss at 18-19 [Docket No. 17]; Dunbar Defs.' Mem. in Support of Mot. to Dismiss at 19-20 [Docket No. 19]; South Charleston Defs.' Mem. in Support of Mot. to Dismiss at 18 [Docket No. 22]; Pls.' Mem. in Opposition to Charleston Defs.' Mot. to Dismiss at 12-17 [Docket No. 29].

Where, as here, the state statutes are settled and unambiguous, the federal court need not worry that it will be encroaching upon the "rightful independence of the state governments," *Pullman,* 312 U.S. at 500-01, in straightforwardly applying the statutes. *See Hawaii Hous. Auth.,* 467 U.S. at 237; *Nivens,* 444 F.3d at 246. This case simply does not require application of the "extraordinary and narrow exception[] to a federal court's duty to exercise the jurisdiction conferred on it." *Martin,* 499 F.3d at 363; *Massey Energy Co.*, 2007 U.S. Dist. LEXIS 70330 at *23. Accordingly, Defendants urge this Court not to abstain. Alternatively, as Plaintiffs suggest,

certification of one or more questions to the West Virginia Supreme Court of Appeals would offer a more efficient and direct method of resolving any West Virginia law issues which this Court determines require the unique expertise of the state court.

### V. Conclusion

This case presents no issue of unsettled or ambiguous state constitutional or statutory law which would give rise to application of the *Pullman* doctrine. All of the West Virginia constitutional provisions and laws at issue have been on the books for many years and have been thoroughly explored by the West Virginia courts. This Court is well familiar with those laws, and should not abdicate its jurisdiction to hear all of the claims before it, given the fundamental issues at stake. The Supreme Court and Fourth Circuit cases analyzing *Pullman* direct that abstention is unwarranted here, and that this Court should exercise its Congressionally given jurisdiction over this case. Finally, it bears mention that Plaintiffs chose to sue in this court and have chosen to remain here despite the potential for abstention. Plaintiffs' "choice of forum is. . . entitled to respect and deference." *Carefirst of Md., Inc. v. Carefirst Urgent Care Ctr., LLC*, 305 F.3d 253, 260 (4th Cir. 2002).

Should this Court nevertheless determine to abstain from consideration of the state law issues, Defendants respectfully request that it first resolve the pending motions to dismiss, which primarily concern whether Plaintiffs have Article III standing to bring their claims at all. In addition, Defendants reserve the right to federal court disposition of the federal issues at stake. *England v. La. State Bd. of Med. Exam'rs,* 375 U.S. 411, 421-22 (1964) (after a federal court has abstained under the Pullman doctrine in order to obtain an authoritative interpretation of state law that could potentially moot or influence the federal constitutional questions presented, parties who have been remitted to state court against their will are not forced to litigate their

federal claims there, but may reserve the right to a federal adjudication of these claims.) A reservation of rights under *England* may be made by any party to the litigation. *Id.* at 422, n.13.

         Respectfully submitted,

         /s/ Ricklin Brown
         Benjamin L. Bailey (WV Bar No. 200)
         Ricklin Brown (WV Bar No. 500)
         Bailey & Glasser, LLP
         209 Capitol Street
         Charleston, West Virginia 25301
          *Counsel for Defendants City of Charleston,*
          *Danny Jones, and Brent Webster*

         /s/ Webster J. Arceneaux, III
         Webster J. Arceneaux, III (WV Bar No. 155)
         Spencer D. Elliott (WV Bar No. 8064)
         Lewis, Glasser, Casey & Rollins, PLLC
         P.O. Box 1746
         Charleston, West Virginia 25326
         Telephone: (304) 345-2000
         Facsimile: (304) 343-7999
          *Counsel for City Of Dunbar, Jack Yeager,*
          *Mayor, and Earl Whittington, Chief of*
          *Police*

         /s/ W. Michael Moore
         W. Michael Moore (WVSB #5168)
         Alicia A. Deligne (WVSB #10343)
         **MOORE &BISER PLLC**
         317 Fifth Avenue
         South Charleston, WV 25303
         Phone: 304-414-2300
         Fax: 304-414-4506
          *Counsel for City of South Charleston,*
          *Frank A. Mullens, Mayor, and Brad L.*
          *Rinehart, Chief of Police*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WEST VIRGINIA CITIZENS DEFENSE
LEAGUE, INC., *et al.*

        Plaintiffs,

                                  CIVIL ACTION NO. 2:11-cv-0048

vs.

                                  (Copenhaver, J.)

CITY OF CHARLESTON, *et al.*

        Defendants.

## CERTIFICATE OF SERVICE

      I, Ricklin Brown, herby affirm that on this date, July 28, 2011, I caused the foregoing **DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFFS' OBJECTIONS TO PROPOSED *PULLMAN* ABSTENTION** to be served on the following attorneys with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James M. Mullins, Jr.
The Law Offices of James M. Mullins, Jr., PLLC
101 North Kanawha Street, Suite 401
Beckley, West Virginia  25801

W. Michael Moore
Moore & Biser, PLLC
317 Fifth Avenue
South Charleston, West Virginia  25303

Webster J. Arceneaux, III
Lewis, Glasser, Casey & Rollins, PLLC
P.O. Box 1746
Charleston, West Virginia  25326

                                          /s/  Ricklin Brown
                                          Benjamin L. Bailey (WV Bar No. 200)
                                          Ricklin Brown (WV Bar No. 500)
                                          Bailey & Glasser, LLP
                                          209 Capitol Street
                                          Charleston, West Virginia 25301

                                          Counsel for Defendants City of Charleston, Danny Jones, and Brent Webster